GALENA AND CHICAGO UNION R. R. COMPANY, Appellant, *v.* ALBERT R. FAY, Appellee.

APPEAL FROM KANE.

The principles of the case of *Galena Rail Road Company* v. *Yarwood*, in fifteenth Illinois Reports, examined and approved.

The doctrine in relation to the mutual negligence of parties, in causing an injury, as affecting the right of parties to recover therefor, is applicable to passengers carried upon rail roads.

A passenger takes all the risks incident to the mode of travel, and the character of the means of conveyance which he selects; but the care, vigilance and skill of the parties furnishing the conveyance, should be adapted to it; the carrier and the passenger owing reciprocal duties each to the other.

The conduct of passengers on a rail road, on the happening of an accident, though not in the presence of a party who is injured, may be given in proof, to show how the apparent danger impressed others.

Where a proper foundation has been laid for it, a witness may be inquired of as to what another witness stated in reference to his own conduct, and that of the plaintiff, just prior to an accident, for the purpose of impeaching the witness by showing a contradiction to his previous answer.

A carrier of passengers is not an insurer against all accidents, but is liable only for the want of a suitable degree of care, diligence and skill.

If a passenger on a rail road car is guilty of negligence, by unnecessarily exposing himself to danger, by wrestling or scuffling on the cars, or by imprudently and unnecessarily passing from one car to another while the cars are in motion, and receives an injury, and his carelessness or imprudence has contributed in any way to produce the injury, he cannot recover for it.

If a passenger on a rail road car imprudently and carelessly exposes himself to danger, by scuffling or playing, and is injured while being transported on the cars, and his imprudence or carelessness has in any way contributed to produce the injury, he cannot recover for it; nor is it necessary that the imprudence or carelessness of the passenger should be restricted to the moment of the accident.

If a passenger who is being conveyed on a rail road car is guilty of a want of reasonable care, and his want of such care concurs with that of the rail road company in producing an injury to him, he cannot recover for it.

A rail road company, in an action brought by a passenger who leaped from a car when an accident occurred, to recover for injuries, may show that the injury resulted from the carelessness or culpable negligence of the passenger, prior to the accident.

A passenger who seeks redress from a carrier, for an injury, must show not only that the injury to him was the result of the carelessness or negligence of the carrier, but also that himself was without fault in producing the injury; and the burthen of proof is on him, not only to show that the carrier was negligent, but that himself was not guilty of negligence.

Carriers are not bound to answer for all the lower degrees of carelessness and negligence on the part of passengers carried by them, short of recklessness or carelessness.

THIS was an action on the case for personal injuries. Cause tried at May term, 1854, of Kane Circuit Court, before Hon. B. S. MORRIS and a jury. Verdict for plaintiff for $2,500.

The testimony shows, that in the month of August, Fay, with two others, got on plaintiffs' cars at Elgin to ride to Clinton, a distance of some three miles. The train consisted of the locomotive and tender, then a baggage car, next a second class car, and, behind all, a first class car. When the defendant and his companions presented themselves to ride, they were told by the conductor of the train, "that the passenger car was full, and they must, or had better, get into the baggage car." They thereupon went into the baggage car. Soon after the cars left Elgin, the defendant and his companions commenced playing and scuffling; it was warm weather, and they pulled up each other's shirts. From Elgin, about one and a half miles, was T rail, then there was the flat, or strap rail. Soon after the train came upon the strap rail, the hind trucks of the second class car, and the forward trucks of the first class car, were thrown from the track, by a snake-head, probably. The speed of the train had slackened upon coming upon the strap rail, and it was running at the time at a safe and proper rate of speed. The brakes were put down, and the train stopped as soon as possible. *The baggage car was not off the track, nor in any danger.* Just before this accident, the defendant had chased one of his companions out of the baggage car into the second class car, and he was in the second class car, or upon the platform, at the time, and he jumped from the car to the ground and received the injuries complained of. At the time he jumped, the cars were moving at a slow rate of speed, say three to four miles per hour. The defendant's companions and two others, (who were not regular passengers, and who were upon the platforms of cars,) also jumped off, and one of defendant's companions (Yarwood) was injured by so doing. No other person was injured. Those remaining in the cars were not injured.

There were two other persons in baggage car, who remained there, and experienced no difficulty or injury in so remaining.

This part of the road was recently repaired, and in very good order. It was passed over daily, and generally after each train, by persons whose duty it was to keep it in repair. The accident occurred about 4 o'clock P. M., and one train had passed over between the examination and this train. That this was as good as any flat rail road, and was well graveled and balasted.

On the trial these questions were asked one of the witnesses, (Charles B. Wells,) who was in the first class car, by Fay's counsel:

" What was the conduct of the passengers in the first class car, if any, indicating that there was or was not alarm among them ?" Also, " What exclamations, if any, were made by passengers in first class car, indicating alarm?" These questions were each objected to, but objections overruled, and exceptions taken. The witness's answer to the first was, "There was a general rising of passengers and catching hold of seats, and of one another; there was a rush towards the aisle; besides this, there was but little movement among them." To the second he answered, that " There was a general screaming of the ladies, asking what they could do ?" The doors of the first class car were closed, and the defendant was not in at all.

Lewis H. Yarwood, who was a witness for Fay, swore that he did not tell Wiggins, or Brewer, on the cars, that they (himself and companions) had been having a *regular tear*. John S. Brewer, a witness for plaintiffs, was asked by plaintiffs' counsel this question: " Did Yarwood, upon coming into the first class passenger car, state to you, or to Capt. Wiggins, in your presence, ' We have been having a *regular tear ?*' " To which the court sustained an objection, and exception was taken.

William H. Wiggins, the conductor of the train, was asked the following questions by Fáy's counsel:

" State what effect the motion of the second class car, when off the track, would, in your opinion, produce upon the minds of the average of mankind in the cars, as to whether it would or would not produce alarm, and to what extent, if any ?" The question was objected to, and objection overruled by court, and excepted to. The witness answered, " I think it would excite and alarm the passengers."

The plaintiff below rested his case, without giving any evidence of the condition of the road. The defendants below followed the example; and then the court allowed Fay to examine witnesses upon that subject. This was objected to, and exceptions taken.

The defendants in the court below, asked the court to give the following instructions:

Third. That the defendants, as common carriers of passengers, are not insurers against all accidents, but are liable only for the want of such care, diligence and skill, as is characteristic of cautious persons ; and, if the defendants exercised such care and diligence in the transportation of the plaintiff, then the plaintiff cannot recover.

Fifth. If the jury believe, from the evidence, that the plaintiff, while on his passage from Elgin to Clinton, was guilty of carelessness, and unnecessarily exposing himself to danger, by wrestling or scuffling on the cars, or by imprudently and unnecessarily passing from one car to another while the cars were in motion, and that such carelessness or imprudence contributed in any way to produce the injury, then the plaintiff cannot recover.

Sixth. If the jury believe, from the evidence, that the plaintiff, while on defendants' cars, imprudently and carelessly exposed himself to danger, by scuffling or playing, and that the injury to him was the result of such carelessness or imprudence, or that such carelessness or imprudence in any way contributed to produce the injury, then the plaintiff cannot recover, even though the jury may believe that the defendants have also been guilty of negligence.

Seventh. If the jury shall believe, from the evidence, that the plaintiff was guilty of any want of reasonable care, while a passenger upon the defendants' cars, and that such, his want of care, concurred with the negligence of the defendant in producing the injury, then the plaintiff cannot recover.

Eighth. That the plaintiff, before he can recover in this action, must show, not only that the injury to him was the result of the carelessness or negligence of the defendants, but also that he himself was without fault in producing said injury.

Ninth. That the plaintiff cannot recover unless the jury shall believe that he exercised proper care and circumspection while on his passage from Elgin to Clinton, and that the defendants were guilty of negligence, from which the injury resulted, and the burden of proof is upon the plaintiff, not only to show that the defendants were negligent, but that he himself was not guilty of negligence.

Eleventh. If the jury believe, from the evidence, that the plaintiff leaped from the cars of the defendants, under circumstances that would not have justified such an act on the part of a prudent, careful man, and that the injury was the result of such leaping, then the plaintiff cannot recover.

Twelfth. If the jury believe, from the evidence, that the plaintiff leaped from the defendants' baggage car, while said

36

car, and the locomotive and tender were upon the track, and while the cars were moving slowly, these are facts from which the jury may presume that the plaintiff was guilty of imprudence and carelessness in leaping from said cars.

Thirteenth. If the jury shall believe, from the evidence, that the plaintiff [without reasonable cause, rashly] leaped from the cars of the defendants, when he was in no peril, and leaped carelessly and recklessly, and that his careless and reckless manner of jumping contributed to produce [caused] the injury, then the plaintiff cannot recover.

The court refused to give all the foregoing instructions, as asked; but gave the last (thirteenth) with these amendments, by inserting between the words "plaintiff" and "leaped" in the second line, these words, "without reasonable cause, rashly," as in brackets, and by striking out the words "contributed to produce," and inserting instead the word "caused," as in brackets.

The court was also asked by the defendants below to give the following instruction:

Fifteenth. If the jury believe, from the evidence, that previous to taking passage on the defendants' cars, at the depot in Elgin, the plaintiff was directed by the conductor to take his place in the baggage car, because there was not room for him in the first class passenger car, and that the plaintiff did go into said baggage car at the time of starting, and whilst on the way from Elgin to Clinton he left said car, without any reasonable cause, and passed, carelessly [and recklessly,] from one car to another, and that the injury to the plaintiff happened in consequence [of his leaving the car so assigned to him, and, without reasonable cause, leaped from the cars, whereby he was injured,] then the plaintiff cannot recover.

The court refused to give said instruction, but amended it by inserting the words in brackets, and gave it.

The defendants below also asked the court to give the following instructions:

Sixteenth. That the plaintiff must prove his cause as stated in his declaration, and if the jury shall not believe that the car in which the plaintiff was riding, in his passage from Elgin to Clinton, and immediately previous to the plaintiff's leaping from the car, was thrown off the track by the negligence of the defendants, and was proceeding over the ties, and was tossed about so that the plaintiff's life or limbs were in great peril, or that the said plaintiff's life or limbs were there or then greatly jeoparded and endangered by remaining in the cars, then the plaintiff cannot recover.

Seventeenth. If the jury believe, from the evidence, that the injury to the plaintiff, complained of in this action, was the result of the negligence or want of care of both the plaintiff and the defendants, the jury should find for the defendants.

Which the court refused to give.

The court was also asked to instruct the jury:

Eighteenth. If the jury believe, from the evidence, that Fay did not hear whatever noise there might have been in the passenger car, when the same ran off the track, then the jury should disregard the evidence of such noise as influencing the conduct of Fay.

Which the court refused to give as asked, but gave by adding thereto these words: " otherwise than showing the reasonableness of his fear of danger."

Also the following instruction:

Nineteenth. The plaintiff, as passenger upon defendants' rail road, must be presumed to have taken upon himself the risks necessarily incident to the mode of travel which he adopted, and if, without fault of the defendants, or by a concurrence of the fault, negligence or want of care of both plaintiff and defendants, the plaintiff was injured, the jury should find for defendants.

Which the court refused to give.

The court also gave the following, of his own motion, in place of number seven.

Twentieth. If the jury believe, from the evidence, that the plaintiff was guilty of a want of reasonable care at the time the accident happened, or, without reasonable care, or apprehension of danger, rashly leaped from the cars, by which he was injured, he ought not to recover, although the defendants' negligence contributed to the injury in such case.

And the following, in the place of number sixteen:

Twenty-first. But the court states that the plaintiff must prove his case as stated, in some one of the counts in his declaration to the satisfaction of the jury, before the jury ought to find in his favor.

Defendants below excepted to each of the above refusals and amendments, qualifications and substitutes.

The court, at the request of the plaintiff below, then gave the following instructions:

Fourth. If the jury believe, from the evidence, that the cars of the defendants, while carrying the plaintiff as a passenger from Elgin to Clinton, were run or thrown off the track, that fact is *prima facie* evidence of a neglect or disregard of their duties as common carriers, and in such cases it devolves upon them to prove that there was no neglect or disregard of their

duty, but that the running off resulted from a cause which *no human care, foresight or skill could prevent.*

Fifth. If the jury believe, from the evidence, that the rail road track was out of order and repair, and that the cars, in consequence thereof, were thrown off the track, and that while thus off and in violent motion, the plaintiff had reasonable grounds to apprehend danger to his life or limbs, if he continued in the car, and that to escape from the supposed danger he jumped off the car, and thereby received the injury he complains of, then the defendants are liable, though it may now appear that if he had remained in the cars he would have been safe; the law in such cases proceeds upon the principle that when danger comes suddenly upon a passenger, he may not be sufficiently self-possessed to know in what way to act, and then the carrier is answerable for the injury resulting therefrom.

Sixth. If the jury believe, from the evidence, that the motion of the cars, while off the track, the excitement among the passengers, the place as to danger where the cars were off, and all the circumstances connected with them, generated by their running off, would have produced in the mind of any man of ordinary firmness and prudence, such fear of injury as to induce him to leap from the cars for safety, then the plaintiff, in law was justified in jumping from the cars in such a case, and that fact is no bar to his recovery.

Eighth. On the question whether there was such apparent danger as would have caused fear in the minds of the average of mankind similarly situated, the jury are not bound by the opinion expressed by witnesses; the jury are also to judge from the circumstances proven, and *their* own personal knowledge of human nature, and should adopt so much of the opinion of a witness as meets the approbation and judgment of the jury, and no more.

Ninth. The prudence and due care required of the common carrier, by law, is of the highest order; the utmost possible skill, care, diligence and watchfulness, to the safety of the passengers, and in this sense, the words "*due care, etc.*," as mentioned in the defendants' instructions, is intended. The prudence required of the passenger, is simply such as ordinary men usually exercise in like circumstances, and if the jury believe from the evidence, that by reason of the omission or neglect of the defendants or any one of their servants, the cars were thrown off the track while under way, and the plaintiff was thereby put in danger, and, to save himself, leaped from the car, and thus received the injury, the defendants cannot excuse themselves from responsibility by reason of any act of the plaintiff, unless they show first, that such act helped to pro-

duce the injury, and secondly, that such act was so imprudent, rash or heedless, that the exercise of such prudence as the average of mankind possess, would have prevented the plaintiff from doing the act.

Tenth. The defendants having admitted to be common carriers for hire, they [are and were] at the time, bound to use the utmost care, foresight and diligence in providing of safe, sufficient and suitable conveyance, in order to prevent those injuries which human care, diligence and foresight could guard against, and if the plaintiff's injury happened by reason of a defect in the road of defendants, which might have been discovered and prevented by a careful and thorough investigation thereof immediately after the eastern train had passed, and before the train coming east with the plaintiff ran over the same track going east, then such accident must or ought to be ascribed to the negligence of the defendants or their servants.

But if the jury believe the accident did arise from a hidden defect of the road, which no human care, skill, foresight, or careful and prior examination of the road, at the point where the accident happened, could have discovered, and which could not be guarded against by the exercise of a sound judgment and a vigilant foresight, then the defendants are not liable. On the other hand, if the injury was the result of the SLIGHTEST neglect of the defendants or their servants, then they are liable therefor, unless the jury further believe, from the evidence, that the plaintiff's act of jumping from the car was rash, and without reasonable grounds of fear of injury by remaining in the car any longer.

To the giving of which instructions *defendants below excepted.* The court overruled defendants' motion for a new trial, and appellants excepted.

The first three counts in narrative allege that *" the car"* in which the plaintiff took passage, was off the track, etc. etc.

The fourth count alleges that it became unsafe for the plaintiff to remain in *the car* in which he took passage, etc. etc. That he was therein and in great peril, etc., and jumped to the ground from that car to save himself, etc.

The following instructions were given by the court below, at the request of the defendants, or in lieu of instructions asked by them:

No. 1. That if the jury shall believe, from the evidence, that the injury to the plaintiff in this suit, happened to him by mere accident, without fault on the part of defendants, then the plaintiff cannot recover.

No. 2. If the jury shall believe, from the evidence, that the defendants exercised due care, diligence and skill, in the preser-

vation and repair of their track, and in managing and operating their road at the time of the accident, and that the accident could not have been prevented by the use of such care, diligence and skill, then the plaintiff cannot recover in this action.

No. 3. If the jury shall believe, from the evidence, that the injury to the plaintiff was the result of an accident which could not be avoided by the exercise of due care and skill, in the preparation and management of their means of conveyance on the part of the defendants, the plaintiff cannotr ecover.

No. 4. · If the jury believe, from the evidence, that the plaintiff was guilty of a want of reasonable care at the time the accident happened, or without reasonable cause or apprehension of danger, rashly leaped from the cars, by which he was injured, he ought not to recover, although the defendants' negligence contributed to the injury in such case.

Instruction No. 4 was given by the court, in lieu of the one marked 7, asked by appellants.

No. 5. If the jury shall believe, from the evidence, that the plaintiff leaped from the car of the defendants, under a rash and undue apprehension of danger, when in reality there was no danger, and that the injury was the result of such leaping, then the plaintiff cannot recover.

No. 6. If the jury shall believe, from the evidence, that the plaintiff, without reasonable cause, rashly leaped from the car of the defendants when he was in no peril, and leaped carelessly and recklessly, and that his careless, reckless manner of jumping, caused the injury, then the plaintiff cannot recover.

Instruction No. 6 was given by the court, in lieu of one marked 13, asked by appellants.

No. 7. If the jury shall believe, from the evidence, that the plaintiff leaped from the car of the defendants while it was moving slowly in a place where there was no danger of the car being upset or injured, under a rash and undue apprehension of danger, when in reality he was in no danger, and that the injury was caused by such leaping, they must find for the defendants, even though the plaintiff, at the time, really thought himself in danger, and leaped to the ground to save himself from harm.

·No. 8. If the jury believe, from the evidence, that previous to taking passage in the defendants' cars at the depot in Elgin, the plaintiff was directed by the conductor to take his place in the baggage car, because there was not room for him in the first class passenger car, and that the plaintiff did go into said baggage car at the time of starting, and whilst on the way from Elgin to Clinton, he left said car without any reasonable cause, and passed carelessly and recklessly from one car to another, and that the injury to the plaintiff happened in consequence of

his so leaving the car so assigned to him, and without reasonable cause, leaped from the cars, whereby he was injured, then the plaintiff cannot recover.

Instruction No. 8 was given by the court in lieu of one offered by defendants, marked 15.

No. 9. But the court states that the plaintiff must prove his case, as stated in some one of the counts in his declaration, to the satisfaction of the jury, before the jury ought to find in his favor.

Instruction No. 9 was given by the court in lieu of one offered by defendants, marked 16.

No. 10. If the jury believe, from the evidence, that Fay did not hear whatever noise there might have been in the passenger car, when the same run off the track, then the jury should disregard the evidence of such noise as influencing the conduct of Fay, otherwise than showing the reasonableness of his fear of danger.

No. 10 was given by the court in lieu of one marked 18.

E. Peck and J. F. Farnsworth, for Appellants.

T. S. Dickey and S. Wilcox, for Appellee.

Scates, C. J. As the injury happened at the same time, and the facts are so much like those in the same plaintiffs against L. H. Yarwood before us, in 15 Ill. R. 468, as to involve the same principles of law, we have again carefully examined the principles there laid down, and fully approve them, believing them sustained by settled adjudications and text writers. It is objected that the doctrine in relation to the mutual negligence of the parties causing the injury, is not applicable to carriers of passengers by railroad, and should not be applied as in that case. To our mind, there is no apparent ground or reason for distinct___ ___ ___ference. The degree of responsibility and care betwee___ ___r inanimate things, and reasonable beings having vol___ ___ound in the difference between property and persons___ ___ot referable at all to modes of conveyance. I know of no case making any distinction. As to the latter, Justice McLean well remarks, in *McKinney* v. *Neil*, 1 McLean R. 550, that " we are surrounded with dangers at home and abroad, and they are greater when we travel than while we remain stationary. In some modes of traveling these dangers are greater than in others. They may be greater on water than on land; on a fast line of stages than on a slow one; and every passenger must make up his mind to meet the risks incident to the mode of travel he adopts, which cannot be avoided by the

utmost degree of care and skill in the preparation and manage-
ment of the means of conveyance. This is the only guaranty
given by the proprietor of the line." If one will take passage
in a balloon, he should not expect or require the conductor to
insure his life, limb, or safe passage, nor to do more than exert
the greatest degree of care, with competent skill in that mode
of sailing. Nor can passengers, by steam power, either in
boats or on railroads, expect the same degree of security that
they would enjoy by wagons, canal packets, or stage coaches.
The degrees of care, vigilance and skill are the highest, and the
responsibility is for the least neglect known to the law short of
insurance. And these, in their application, have respect to the
particular mode of travel or transportation offered. The care,
vigilance and skill must be adapted to the motive power and
means. A servant well qualified to steer a boat or manage a
team, might be totally unfit to manage steam, or regulate the
running of a boat or locomotive. The means should be reason-
ably adapted to the end, and the care and skill to the use of
the means, whether of one or another mode of transportation.
These differences we recognize as within the rule of diligence.
But while the care, skill and diligence are judged of in refer-
ence to what is required by the dangerousness of the particular
mode, we can see no propriety or justice in relaxing from a
proportionate care on the part of passengers, according to the in-
creased hazards of the mode of transportation adopted by them.
This is surely reasonable, and must continue to be a reciprocal
duty to carriers by railroads. See 13 Barb. S. C. R. 14.

Upon the evidence, contradictory as it is, we shall not inter-
fere with the verdict. Upon the question of a special passage
in the baggage car, the evidence in the case, unlike the case of
Yarwood referred to, is conflicting. The jury were judges of
what was before them, and they have settled the facts, under
instructions.

The conduct and exclamations of passengers in the cars were
not improperly admitted, as tending to show hcircum-
stances of apparent danger impressed every oto some
degree, explain defendant's conduct, and vindicm rash-
ness and imprudence from undue alarm. It is impossible for a
witness to convey such scenes to the mind, and their effect and
influence upon it. Such general conduct, with the exclamations
involuntarily thrown out by appearances of imminent peril, may
be regarded as a part of the *res gestæ* for this purpose.

A proper foundation for asking Brewer for the statement of
Yarwood had been laid, by the preliminary question to, and
answer of Yarwood, for the purposes of impeachment. The
matter was relevant, as tending to show a contradiction, and

the time and place, and persons connected with the conversation or statement, were certain and specific. Brewer was the person, and it was on the cars, just before the accident. All the pre-requisites, laid down by Mr. Greenleaf, are found in the questions put to and answered by Yarwood. 1 Greenl. Ev., Sec. 462. The question should have been allowed, and answered by Brewer.

. The first part of the third instruction asked by plaintiffs in error, we again sanction as correct, but the latter part we will again repeat, as we said in 15 Ill. 469, " is too narrow, and does not express the full degree of plaintiffs' liability as common carriers of passengers." We see no propriety in attempting new definitions, or departing from the common and well understood terms, for expressing the degrees of both diligence and negligence. When parties persist in attempts to use new and indefinite expressions, we cannot but be strongly impressed with the belief that the usual ones do not suit their purpose. The care and diligence of " cautious " persons, is indefinite, uncertain, and no two minds would agree as to the degree indicated.

The fifth, sixth and seventh instructions, asked by appellants, were fair statements of the law, and should have been given. Number four, given in lieu of number seven, is too restrictive. It confines the want of reasonable care to the moment of the accident, and excludes all consideration of a previous want of care ; at least, so we understand it. Now the leap at the moment taken, and under the circumstances, might have been prudent and defensible, and yet a previous want of care, or culpable negligence, may have brought him into the situation, to make it necessary and justifiable. Previous acts of appellants, and want of care, diligence and skill in building, equipping, running, repairing and operating the road up to the moment of the accident, so far as they tended to show culpable negligence in the alleged injury, were proper subjects of inquiry, amd might be embraced within instructions. So, in like manner, they have a right to show that the injury was the consequence or result of defendant's want of care or culpable negligence at any time, or that such negligence contributed to produce it. Suppose he should have done an act hours before, or miles distant, from the time and place of the injury, which contributed to it, can this be separated and excluded from our consideration. Suppose he had carelessly placed articles upon the platforms of the cars, liable to be shaken off and across the track, and they were carelessly suffered by the servants of the company to remain until thrown under the wheels, and the cars be thrown off the track thereby, would a justifiable leap, after the necessity occurred, exculpate his previous carelessness, although he might show

theirs? Giving such instructions does not depend upon the sufficiency of the evidence offered, but upon the fact that there is evidence tending to establish the fact alleged. Here there was evidence to that point in the defense, and the court should have instructed the jury of its legal consequences upon defendant's rights, in case they believed such negligence proven upon him. This was fully discussed and settled in principle in 15 Ill. R. 468, and the *Aurora Branch R. R. Co.* v. *Grimes*, 13 Ill. R. 585. This last case has also settled the principle contained in the eighth and ninth instructions asked, and is fortified by the case of *Haring* v. *N. Y. and Erie R. R. Co.*, 13 Barb. S. C. R. 14, and *Moore* v. *Abbott*, 32 Maine R. 49 ; Angell on Carr., Sec. 556, 557.

These instructions were proper and should have been given.

After a careful consideration of the eleventh and twelfth instructions, we are unable to detect any substantial objection to them, and think they should have been given.

The thirteenth and fifteenth were proper, and should have been given. We think the modifications given by the court in lieu of those asked, have expressed too strong a degree of carelessness. // It is enough in law to constitute a defense, that the negligence and carelessness caused or contributed to the injury complained of. Where these are shown, courts and juries cannot adjust their degrees and guage their effects, nor will the law hold carriers to answer for all the lower degrees, until they amount to *rashness* and *recklessness*. This would add to the highest degree of care, imposed by law upon carriers, an additional responsibility for the negligence and carelessness of passengers short of gross negligence. But such is not the law, and we cannot sanction instructions so stating it; nor shall we here undertake to say how slight a degree will destroy the right of reparation.

The ninth, given in lieu of the sixteenth asked, was proper.

The sixteenth belongs to a class condemned by this court in 15 Ill. referred to, and is properly modified in number twenty-one.

The seventeenth and nineteenth should have been given. The eighteenth was properly modified.

The degrees of care of the plaintiffs, and negligence of defendant, as presented in the ninth and tenth instructions given for defendant here, are not accurately presented. The "utmost possible care," and "slightest neglect," are superlative terms, unsafe and improper to be indulged in, as expressive of the requirements of the law, while it requires, at the same time, the highest degree of the one, and charges for slight neglect. So, for the other party, prudence, " simply such as ordinary men

usually exercise," is very indefinite, and may fix no rule or standard at all in law.

As the cause must be again tried, we have examined and discussed these instructions in detail, numerous as they are, in the sincere hope to present what we regard as the settled principles of law, applicable to such injuries.

We can but think the principles all plain, and easily to be understood as laid down in the decisions of courts; and if these were plainly and fairly drawn out into instructions, without embellishments of superlatives, or garnishment of partial statements of facts, juries would easily comprehend the mutual duties and liabilities of the parties, and adjust their rights.

Carriers of passengers are not insurers of life, limb, or against loss, damage or injury, as carriers of goods are, except for acts of Providence or the public enemy; but they are required to use the highest degree of care, diligence, vigilance and skill in the selection of materials, construction of their vehicles, and other means of transportation, and for their conduct and management, repairs and preservation of them, with a view to the comfort, safety and transportation of passengers and their baggage; and they are liable for slight neglect or carelessness in any of these particulars, qualified, however, by the reciprocal duty of the passenger, that his want of ordinary care does not cause or contribute to produce the injury.

Judgment reversed, and cause remanded for new trial.

*Judgment reversed.*

---

SKINNER, J. I am unable to concur in all the conclusions and reasoning of the foregoing opinion.