# The Chicago, Burlington and Quincy Railroad Co.

*v.*

# Ruby VanPatten, Admx. etc.

1. Negligence—*failure to ring bell or sound whistle.* While it is true that it is negligence on the part of the servants of a railroad company to omit to ring the bell or sound the whistle when approaching a public crossing, yet the company is not necessarily liable for every accident that may occur when they omit this duty. It is only when the injury happens by reason of such neglect that the company is liable. The plaintiff in such case must not only show the omission of this duty, but also from facts and circumstances, at least, that the injury was occasioned by such neglect.

2. In a suit against a railroad company to recover damages for the killing of a person by one of its trains, at a public crossing, where the evidence was conflicting on all material points, the court instructed the jury, in substance, that if they believed from the evidence that, at the time of the disaster, no bell was rung or whistle sounded, they were at liberty to infer negligence on the part of the defendant, and should find for the plaintiff, unless they believed from the evidence the deceased was guilty of such negligence as contributed directly to produce or cause the injury: *Held,* that the instruction did not state the law of the case correctly, as it did not necessarily follow that this omission of duty caused the injury.

3. Same—*negligence of deceased.* Where a party knows he is approaching a railroad crossing, whether in a city or elsewhere, it is his duty, if possible, to observe the usual and proper precautions, by looking in either direction, and watching for the usual signals of danger, before attempting to cross; and where it appears from direct testimony, or from facts and circumstances, that the party was injured from a want of these precautions, he can not recover, however serious the injury he may receive.

4. Same—*instruction as to what is negligence.* The court, in the same case, instructed the jury that it was gross negligence for the engineer not to observe a person or stock on or near the track, at a road-crossing, for eighty or a hundred yards before reaching such point, when he could, by proper diligence, have readily done so. The fact was, that the deceased was traveling along side of the track, in the same direction with the approaching train, and the evidence failed to show that if the train was running at a moderate rate of speed, it could have been stopped in time, after the deceased got upon the track, so as to prevent a collision: *Held,* that, while the instruction stated the abstract proposition of law correctly,

it was not justified in this case, and was calculated to mislead, as the jury could interpret it as assuming that the engineer had omitted some duty in this respect, which did not appear from the evidence.

5. Same—*comparative negligence of the parties.* In the same case, the court instructed the jury, in substance, that although they might believe from the evidence that the deceased might have failed to use ordinary care and prudence in going upon the track, yet if they believed from the evidence that the defendant was guilty of a greater degree of negligence which caused the injury, the plaintiff might recover: *Held*, not to announce the doctrine of comparative negligence with sufficient accuracy. It might well be inferred from such instruction that although the deceased was himself guilty of gross negligence, in neglecting to observe the ordinary and reasonable precautions expected from a prudent man, yet if the defendant was guilty of a higher degree of gross negligence, the plaintiff might recover, which is not the law.

6. The rule in respect to comparative negligence is, that if both parties are equally in fault, or nearly so, the plaintiff can not recover. In order to establish the liability of the defendant, there must be negligence on his part, and no want of ordinary care on the part of the plaintiff; and where there has been negligence in both parties, still the plaintiff may recover where his negligence is slight, and that of the defendant is gross, in comparison. This rule has been extended to include cases where the negligence of the plaintiff has contributed, in some degree, to the injury, on the ground that the fact of the plaintiff's negligence does not authorize the defendant wantonly or recklessly to destroy his property or injure his person.

7. Instructions—*when great accuracy is required.* In that class of cases sounding in damages, where the evidence is conflicting, and presents a difficult issue, especially where the facts are calculated to touch upon the feelings and sympathies, the jury ought to be most accurately instructed. The instructions in such cases should be clear and concise, and calculated to assist the jury in coming to just conclusions.

8. New trial—*conflict of evidence.* It is a familiar rule that, when the evidence is conflicting, and the case has been fairly presented to the jury, on proper instructions, the verdict will not be disturbed, unless it is manifestly against the weight of the evidence, or where it appears clearly to have been the result of passion or prejudice.

Appeal from the Circuit Court of Peoria county; the Hon. Sabin D. Puterbaugh, Judge, presiding.

Messrs. McCulloch & Stevens, for the appellant.

Messrs. Weed & Jack, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action, brought by the appellee as administratrix, against the railway company, under the statute, to recover damages for causing the death of Matthew B. VanPatten.

It is charged that on the fourth day of January, 1871, as the deceased was about to cross the track of appellant's railroad, on a public crossing within the village of Farmington, being in the exercise of due care and caution, he was run over and killed by a train of cars operated and managed by the servants of the appellant.

The acts of negligence which are relied on to charge the company, consisted, first, in the omission to ring the bell or sound the whistle for the requisite distance before reaching the crossing at which the accident occurred; second, in running the train at a highly dangerous and improper rate of speed; third, in keeping no look-out from the engine; and fourth, in general, mismanagement and gross want of care in running the train. Upon all these points in the case, there is a direct and sharp conflict in the evidence.

The theory of the appellee is that there was no want of ordinary care on the part of the deceased; that as he approached the crossing, he could not see the train; that the servants of the appellant omitted to give the usual signals, that would have notified him of approaching danger; and that if they had been running the train at a proper rate of speed, as it was their duty to do within the corporate limits of the village, and if they had been on the look-out, they could have discovered the deceased in time to have stopped the train, and so avoided the fatal collision.

On the part of the appellant, it is insisted that the usual signals were given at the proper distance before reaching the crossing at which the deceased was about to pass, but because it was a severe, cold day, he was so wrapped in his winter clothing that he could not hear the signals, if given, and that it was gross carelessness in him to approach the crossing without

looking in either direction for the trains, and if he had looked he could have readily seen the advancing train in ample time to have avoided the accident; that the train was running at a slow rate, at least not an unusual rate, of speed; that the engineer was upon the look-out, but as the deceased came upon the track suddenly, having been traveling by the side of the track in the same direction with the advancing train, he was not discovered until it was too late to have avoided the collision, and hence no culpable negligence can be attributed to the company.

It can not be gainsaid that there is evidence in the record that tends to support the opposite theories advanced by the respective parties.

It is a familiar rule in this court that where there is a contrariety of evidence, and where the case has been fairly presented to the jury, on proper instructions, the verdict will not be disturbed unless it is manifestly against the weight of the evidence, or where it appears clearly to have been the result of passion and prejudice; but in that class of cases sounding purely in damages, where the evidence is conflicting, and presents a difficult issue even to persons accustomed to investigate legal matters, the jury ought to be most accurately instructed. We know, from common observation, how apt they are, in cases where the recitals of the facts tend to touch their feelings, to seek for a reason that would justify them in finding a verdict in accordance with their sympathies. An improper instruction may often afford the desired pretext, and in all such cases no instruction which is calculated to mislead the jury into giving a verdict not warranted by law should be allowed to go to them.

We regard this case as one where the jury ought to have been accurately instructed. There is so much conflict in the evidence, that it is a matter of very grave doubt, and the jury should have been assisted in their investigations, by clear, accurate and concise instructions, to enable them to arrive at a just conclusion.

33—64th Ill.

In the light of the evidence in the record, and tested by the principles here announced, we think the error is well assigned that the court erred in giving some of the instructions on behalf of the appellee, and in modifying some of those asked by appellant.

By the second instruction given on the part of the appellee, the jury were told, in substance, that if they believed from the evidence that at the time of the disaster no bell was rung or whistle sounded, they were at liberty to infer negligence on the part of the appellant, and should find for the appellee, unless they should believe from the evidence that the deceased was guilty of such negligence as contributed directly to produce or cause the injury.

This instruction does not state the law correctly. While it is true that it is negligence in the servants of the company to omit to ring the bell or sound a whistle when approaching a public crossing, yet the company is not necessarily liable for every accident that may occur where they omit this duty. It is only where the injury happens by reason of such neglect that the company may be held liable, and such is the plain meaning of the statute on this subject. It was said by this court, in *The Chicago and Rock Island Railroad Company* v. *McKean*, 40 Ill. 218, that the mere omission to ring a bell or sound a whistle will not, *per se*, render the company liable. It must appear from facts and circumstances, at least, that the injury was occasioned by reason of such neglect. How this may be shown, can not be stated in any general rule. It may sometimes be made to appear by showing that the party injured was himself in the exercise of due care and caution; where a party knows he is approaching a railroad crossing, by showing, if it is possible to do so, that he observed the usual and proper precautions, by looking in either direction and watching for the usual signals of danger, before attempting to cross. This is the plain duty of every one who attempts to pass over a railroad crossing, either in the city, in the village or in the country; and where it appears, either from

direct testimony, or from facts and circumstances in evidence, that a party is injured from a want of these usual and prudent precautions, the law can afford no redress, however fearful the injury. *St. Louis, Alton and Terre Haute Railroad Co.* v. *Manly,* 58 Ill. 300.

The fifth instruction given for appellee was also objectionable. We are at a loss to understand why the latter clause was added, which tells the jury it is gross negligence for an engineer not to observe a person or stock on or near the track, at a road crossing, for eighty or a hundred yards before reaching that point, when he could, by proper diligence, have readily done so.

It may be conceded that this clause, so far as it undertakes to state any principle of law, states a correct principle; for if there was an obstruction on the track, only that distance ahead of the train, it would ordinarily be negligence in the engineer not to observe it; for the evidence shows it was his duty to keep a vigilant look-out, as the train advances, to discover whether he is about to meet or encounter any obstructions.

But what phase of this case did it illustrate? We have been unable to discover any evidence in this record that even tends to show that even if the train was only running at the rate of speed insisted upon, it would have been possible for the engineer to have stopped his train, in so short a distance, in time to have avoided the accident. This instruction assumes, in this particular, that the engineer omitted some duty in this regard, that in some way resulted in injury to the deceased; at least the jury could so interpret it, and for that reason it was calculated to prejudice the cause of the appellant. There is no evidence in the record that would justify such an inference.

This instruction is liable to another objection. After stating that it is the duty of all persons approaching a railroad crossing to be on their guard to see that they are not incurring

516    C., B. & Q. R. R. Co. *v.* VanPatten, etc. [Sept. T.,

Opinion of the Court.

danger, and if the person thus situated is guilty of negligence, he is responsible for the consequences, "unless the company has been guilty of misconduct still more gross and wilful," the court, by a modification added to, made the third and thirteenth of appellant's instructions conform to the principle contained in the latter clause of that instruction, and the objection to the instruction and modification will be considered together.

The third instruction stated the law correctly, that if the deceased failed to use that degree of prudence and care in going upon the railroad track, at the place where the accident happened, which a man of ordinary prudence would exercise, under the same circumstances, in respect to his own personal safety, he could not recover, which the court modified by adding, "unless the jury further believe from the evidence that the defendant was guilty of a greater degree of negligence which occasioned the injury." The modification to appellant's thirteenth instruction is, in substance, the same.

The objection to the instruction and modifications is that they do not state the doctrine of comparative negligence with sufficient accuracy. The jury might well have understood, from the doctrine announced, that although the deceased had omitted all those ordinary and reasonable precautions which every prudent man would observe for his own safety when about to cross over a railroad crossing, and had himself been guilty of gross negligence—for the neglect of such precautions would be gross negligence—yet if the appellant was guilty of a higher degree of gross negligence, still the appellee might recover. Such is not the law.

The doctrine of comparative negligence of the parties has been recognized in this State certainly since the decision of the case of *The Galena and Chicago Union R. R. Co.* v. *Jacobs,* 20 Ill. 478. The rule adopted in some of the earlier cases in this court, that the party injured should be without fault, was modified by that decision. But the law is well settled, and the rule has not been departed from, that where the party

injured is alone in fault, and the injuries the result of his own negligence, he can not recover.   *Aurora Branch R. R. Co.* v. *Grimes*, 13 Ill. 585; *Dyer* v. *Talcott*, 16 Ill. 300; *G. and C. U. R. R. Co.* v. *Fay*, 16 Ill. 558.

If both parties are equally in fault, or nearly so, the rule is the same.

The cases in this court that establish the doctrine of comparative negligence, hold that there must be negligence on the part of the defendant, and no want of ordinary care on the part of the plaintiff; and where there has been negligence in both parties, still the plaintiff may recover, where his negligence is slight, and that of the defendant is gross, in comparison with that of the plaintiff.   This rule has been extended to include cases where the negligence of the plaintiff has contributed, in some degree, to the injury complained of.   It is upon the principle that, although a party may have himself been guilty of negligence, it does not authorize another to recklessly and wantonly destroy his property or commit a personal injury.   *C. and A. R. R. Co.* v. *Gretzner*, 46 Ill. 75, and cases cited.

It will be conceded, we apprehend, that the servants of the appellant did not wantonly and purposely kill the deceased. No motive could be assigned for such conduct.   It is only claimed he was killed through the negligent and improper conduct on the part of the servants of the company, in the management of the train.

If the deceased observed reasonable care and caution in approaching the crossing, and the accident was occasioned by the negligence of the servants of the company, then the appellant is clearly liable; but if the deceased was guilty of negligence, in not observing the precautions which an ordinarily prudent man would do before attempting to cross the track, then the real question in the case is, whether his negligence in that regard was slight in comparison with that of the servants of the company, if they were guilty of negligence at all.   This question the instruction, and the modifications made

by the court to the appellant's instructions did not present fairly to the jury. In this view, they were calculated to mislead the jury on the vital question at issue.

For the errors indicated, the judgment is reversed and the cause remanded.

*Judgment reversed.*