# Rockford, Rock Island and St. Louis Railroad Co.

## *v.*

## Abel Byam, Admr., etc.

Negligence—*no recovery for death where deceased was guilty of gross negligence.* Where a person was killed by a train at a railway crossing which was difficult to cross, and dangerous, was perfectly familiar with this fact, yet attempted to cross the same with a team about the time a regular train was due, without looking to see if the train was in sight, it being in the daytime' and the whistle was sounded ninety rods distant from the crossing, and the bell rung continuously, and an alarm sounded some twenty-five rods before reaching the crossing, when the deceased was upon the track, and he then discovered the train for the first time, and before he could get off was killed, the company using every exertion to prevent the accident, it was *held*, that the negligence of the deceased was so great as to preclude a recovery, even though the company was derelict in not making the crossing safe and easy to get over.

Appeal from the Circuit Court of Whiteside county; the Hon. William W. Heaton, Judge, presiding.

. Messrs. Henry & Johnson, and Mr. Charles M. Osborne, for the appellant.

Messrs Sackett & Bennett, for the appellee.

Per Curiam: This was *case*, in the Whiteside circuit court, under the statute, based upon alleged culpable negligence of appellant's servants, resulting in the death of William Crosby. The only questions presented in argument upon this appeal, and which we are called upon to consider, arise upon the evidence, and the action of the court below in overruling appellant's motion for a new trial. The evidence, with the proper exception to the ruling of the court, is preserved in the record, by bill of exceptions. We have attentively examined and carefully considered the issues made by the pleadings, and the evidence introduced in their support. The case can not be distinguished from those of *Chicago and Rock Island R. R. Co.* v. *Still*, 19 Ill. 499, and *Chicago, Burlington and Quincy Railroad Co.* v. *Van Patten*, 64 Ill. 510.

The accident happened in the daytime, January 18, 1870. The highway upon which deceased was traveling, runs a considerable distance nearly parallel with appellant's track, then crosses the latter diagonally.

The crossing was a dangerous one, for two reasons: first, because, from the diagonal course of it, wagons were not infrequently brought into such position that the wheels would get between and slide along the rails, so that, if loaded, much difficulty was experienced in extricating them; secondly, because the approaches were in a bad condition, so that when the wheels were once within or partly within the rails, there was not only difficulty in getting them out, but, in doing so, great care was requisite to avoid being upset in going down the approach upon the other side. But the deceased was perfectly familiar with the crossing; and, upon the occasion in question, as appears by the undisputed testimony, with an overcoat, cap

34—80th Ill.

and muffler upon him, with a double team and load upon his wagon, proceeded along the highway towards the crossing, near the time when a regular train was due. This train, only eight or ten minutes behind time, came from behind him. It was a cold, windy day. Deceased being near the track, the whistle was sounded some ninety rods back of him so that the whole neighborhood heard it. But deceased went along towards and to the crossing, without once turning his head towards the approaching train or stopping his course. When he reached the crossing, and being about to go upon it, or being in fact upon it, the engineer seeing him while from twenty to twenty-five rods distant, sounded the alarm whistle several times violently. Then deceased, being upon the crossing, looked around towards the approaching train for the first time, and seemed to urge, by striking his horses with the reins. The train was running at the rate of from twenty-two to twenty-eight miles per hour, and although every effort seems to have been made to stop the train, deceased was struck and killed. It is very probable that deceased, when upon the crossing, encountered the very difficulty in extricating his wagon to which we have alluded.

One breach of duty charged in the declaration, consists in the failure of appellant's servants to ring the bell and sound the whistle as required by statute. Upon that issue, the evidence clearly preponderates in favor of appellant. The witnesses all agree that the whistle was sounded some ninety rods from the crossing, and to the sounding of the alarm whistle; and the engineer and fireman both testify that the bell was rung continuously the requisite distance from and down to the crossing. The other witnesses testify that they did not hear or did not recollect hearing it. This is mere negative against positive evidence. *Still's case, supra.*

The case just referred to declares the rule of care and caution to which persons driving over such crossings are subject. But counsel for appellee insist that the negligence of deceased was greatly mitigated by the circumstance that an irregular train had passed from the same direction whence came the regular train in question, some three-quarters of an hour be

fore the latter was due, which he mistook for the regular train; wherefore, acting upon such evidence of safety, his negligence was but slight when compared with that of appellant's servants, in that they failed to exercise proper care and caution, to prevent injury to deceased, though improperly on the track, they seeing him in time to have prevented it.

But, as already observed, when the employees of the company saw the deceased approaching toward the crossing, they gave the proper signals of danger, and after they saw he would give no heed to the signals, and was going upon the track without stopping, they seem to have made use of all reasonable effort to avoid the injury. It can not be said that they wantonly or recklessly ran upon the deceased, or failed to make use of ordinary care to avoid doing so.

It is true that the statute, Laws 1869, p. 312, requires railroad companies to maintain their crossings of public highways, and the approaches thereto, within their right of way, so that they shall be safe as to the lives of persons or property. Whatever of imperfection there was in the crossing, deceased, as before said, was familiar with it, and had before, on the same day, driven across it. It may be said, as respects deceased with reference thereto, as was remarked in regard to a similar case in *Chicago and Northwestern R. R. Co.* v. *Sweeney*, 52 Ill. 327, "in proportion to the magnitude of the dangers, should have been his care and caution." The alleged failure of duty on the part of the company in this respect, of a proper crossing, would not absolve the traveler on the highway from the duty of exercising ordinary care and caution for his own safety, and making use of the proper precautions before going upon the crossing—to ascertain whether or not there was a train approaching. These precautions the evidence shows were not used in the present case. The court erred in overruling the motion for a new trial, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*