## THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY

### v.

### MARGARET FITZSIMMONS, ADMINISTRATRIX.

*Master and Servant—Railroads—Negligence of—Personal Injuries—Employe—Crossings—Rate of Speed—Contributory Negligence.*

1. Persons approaching railroad tracks must look out for coming trains.
2. In an action to recover from an employer the pecuniary loss to the widow and next of kin arising from the death of a servant alleged to have been occasioned through its negligence, this court holds as erroneous the giving of an instruction in behalf of the plaintiff, touching among other things the question of damages; that in view of the evidence deceased can not be held to have been in the exercise of ordinary care when killed, and that the judgment for the plaintiff can not stand.

[Opinion filed March 13, 1891.]

Appeal from the Circuit Court of Cook County; the Hon. Richard S. Tuthill, Judge, presiding.

Messrs. Thomas S. Wright and Robert Mather, for appellant.

Messrs. Case, Hudd & Hogan, for appellee.

Waterman, J.  This was an action brought on behalf of the widow and next of kin of James Fitzsimmons to recover the pecuniary loss by them sustained in consequence of his being struck by an engine and killed at the crossing of Fifty-first street and appellant's railway.

John Vizard, a witness on behalf of appellee, testified that he and the deceased were working for the Rock Island Company; that he and Fitzsimmons left the shop about six o'clock and walked homeward together; that they went south on the space between the car shops and the railroad track, and went east on Fifty-first street, as far as the two main tracks of the Chicago, Rock Island & Pacific Railway; there they stood until a freight train going south passed; they then, in the language of the witness, "made for home," or, as he afterward expresses himself, "We made a break to go east." Being then told to tell the jury what occurred, he answered:

"Well, we started east; we entered the track, the north-bound track, and I heard somebody holler, 'Look out,' and with that I looked around and I saw the engine coming right down. I didn't hear anything but somebody holler. I just looked back and I saw the engine, and I turned right round and backed up. I couldn't say how I got off. He was not far from where I stood. I did not see him struck. I left Fitzsimmons on the track and did not see him again until he was under the engine dead."

It was shown that before the accident there were standing about deceased, waiting for the freight to pass, from twenty-five to fifty men; that defendant had been ordered by the town authorities to place gates at this crossing; that it had done so, and that the gates were down at the time of the accident.

The deceased was struck by a switch engine backing north It is insisted that appellant was negligent in backing its engine over this crossing at a time when it must have known that many people would be passing, as its shops had just closed; that the engine was run at, under the circumstances, a reckless rate of speed; the witnesses estimate its speed at from five to ten miles per hour; that the company was negligent in not having a man on the rear of the engine to give warning; and also in not giving any signal of its approach by the ringing of a bell or blast of a whistle as the law requires.

There was no person on the rear of the engine. One witness testified that the bell was not rung or whistle blown.

James Cashman, who was standing about one hundred feet away, testified that he was looking in the direction of the engine; that he heard neither bell nor whistle, and thinks if any had sounded he would have heard it.

John Vizard, who was the companion of Fitzsimmons, heard neither whistle nor engine.

W. H. Slocum, an employe of the defendant, was called as a witness for the plaintiff; appellant making him its witness upon this point, asked if he heard the bell ring, and he answered that he did. Seven other witnesses testified either that the bell was ringing or the whistle blown before the engine reached the crossing.

The testimony of the witnesses for the defendant as to how the accident happened, is not otherwise materially variant from that offered by the plaintiff. One witness testified that just as the freight train going south was about to clear the crossing of Fifty-first street, Fitzsimmons made a dart over and was struck by the switch engine going north.

The deceased, just before he started to go across the track upon which he was killed, was standing in the middle of the street about four or five feet from such track; at this point there seems to have been nothing to obstruct his view of the straight track on which the switch engine was running. There were here some sixteen tracks, and the crossing was a dangerous one.

If the evidence shows that the deceased was not at the

time of the accident exercising ordinary care for his own safety, there can be no, recovery in this case.

Can it be fairly said that the evidence fails to show that whatever may have been the negligence of the defendant, the accident was caused by the want of ordinary care on the part of the deceased?

At a crossing where there were some sixteen tracks and at a time when the gates of the crossing were down, would an ordinarily prudent man, immediately after the passage of a train of thirty freight cars, make a " dart " or a " break" to cross the track? It may be that the whistle was not blown nor the bell rung, but the gates were down; the passage of teams was thus barred and this was notice of the clearest kind that the crossing was being used for the passage of trains. Is there an intelligent man who can truthfully say that at such a time a sudden break across the track was in accordance with the exercise of ordinary care?

We thing the evidence clearly shows that the deceased failed to exercise ordinary care for his own safety.

The Supreme Court of this State in the case of C., M. & St. Paul Ry. Co., 23 N. E. Rep. 1030, say:

"One approaching a railroad crossing is bound to know that it is a place of danger and he must have that regard to the sights and sounds of warning of an approaching train that a man of ordinary caution, under like circumstances, would have; if he permits himself to become absorbed in thought about other matters, and oblivious of his personal surroundings, he does so at his peril."

To the same effect are the cases Ch. & N. W. Ry. Co. v. Hatch, 79 Ill. 137; C., B. & Q. Ry. Co. v. Van Patten, 64 Ill. 510.

It is argued by counsel for appellee that the flag house obstructed his view of the approaching engine. The testimony of Vizard, his companion, is that they walked east on the north sidewalk until they came about between the two main tracks, and that they then stepped over to the middle of the street.

From this point the flag house constituted no obstruction to

a view of the approaching engine. Even had the flag house intervened between the deceased and the track, it was a small, low building, and it would have been, as it was, but a step to reach a point from whence the approach of the engine could have been readily seen; the obligation resting upon parties approaching a railroad crossing to look out for coming trains, has been so often declared in this State, that the citation of authorities is unnecessary. The Supreme Court of Massachusetts in the case of Allerton v. Boston & Maine R. R., applying this rule to a case quite similar to the present, say:

"And this has been repeatedly applied to persons crossing a double track railroad who have started immediately after the passage of one train without looking for the approach of another. * * *

"There is nothing in the case at bar to relieve the plaintiff from the operation of this rule. The gates upon the highway were down, as a warning that the tracks were in use, and that it was not safe to cross. As soon as the train from which the plaintiff's intestate had alighted passed on, she started to cross without waiting for the gates to be raised, and without looking to see whether a train was approaching upon the other track."

In the cases of Granger, Adm'r, v. Boston & Albany R. R. Co., and Chipman, Adm'r, v. Same, 146 Mass. 276, suits, where, as in the case at bar, it appeared that the gates were down, the court say:

"Railroads, from the necessity of the case, have the right to the exclusive use of grade crossings when their trains are passing, and it is their duty to give suitable warning of such passing trains to travelers upon the highway. If they do this, and the traveler disregards the warning, and without sufficient excuse insists upon crossing, he does so at his own risk. In these cases each plaintiff's intestate was warned by the lowered gates that it was unsafe for him to cross the track. It was his duty to wait till the gates were raised; he voluntarily entered upon the track, notwithstanding the warning and without any excuse. This was negligence on his part which caused the accident, and the consequences of his rashness can not be cast

upon the defendant. It is not an answer to say that he may have supposed that the gates were down because the freight train was passing, and he was willing to take the risk of getting safely by that. He had no right so to suppose. It was negligence for him to enter upon the track when he was warned that the railroad required the exclusive use of the crossing for its proper business."

As urged by appellee, notwithstanding the negligence of the deceased, appellee would be entitled to recover if the defendant, after it became aware of the danger to deceased, could by the exercise of ordinary care have prevented the injury. Such principle is not applicable here, because it does not appear that the exercise of any amount of care after the servants of defendant became aware of the danger to appellee would have averted the injury. The deceased was in no danger from the approaching engine until he "made a break" to cross the track, and the accident followed almost instantaneously.

The following instruction was given to the jury:

"If the jury believe from the evidence in the case that the defendant omitted to ring a bell or sound a whistle in the manner required by law, such omission constitutes a *prima facie* case of negligence against the defendant company, and the defendant is liable to the plaintiff for the loss and damage proved to have been sustained by the widow and next of kin of the said James Fitzsimmons, by reason of such negligence (not exceeding the sum of $5,000), even though the deceased was guilty of slight negligence, provided he exercised such care as might be expected from ordinarily prudent men generally under like circumstances."

It is said by counsel for appellee, that the foregoing down to the word "company," was expressly approved in Railroad Co. v. Loomis, 13 Ill. 550. A reference to that case shows that the portion there approved terminates with the word "negligence;" so far the instruction undoubtedly was a correct statement of the law; but when it went further and declared that such omission constituted a case of *prima facie* negligence *against* the company, it went much farther than does the case from which a portion of the instruction was taken.

Counsel for appellee say that beginning with the word "and" and ending with the word "negligence," viz.: "And the defendant is liable to the plaintiff for the loss and damages proved to have been sustained by * * * reason of such negligence," was expressly approved in Railroad Co. v. Elmore, 67 Ill. 176.

In this they are correct; but in what kind of a case was it approved? In an action for the killing of a horse.

In that case it was manifest that the plaintiff, John Elmore, could have sustained no damage exceeding the value of his horse; no jury would have thought of giving him anything for wounded feelings. In the case at bar, the action is brought to recover the *pecuniary* loss sustained by the widow and next of kin of James Fitzsimmons. The statute declares that "the jury may give such damages as they shall deem a fair and just compensation with reference to the *pecuniary* injuries resulting from such death, to the wife and next of kin." The statute does not authorize the giving of compensation for the loss and damage proved to have been sustained. The wife had lost a husband, the children a father; what jury would in such case hesitate to consider the loss and damage to the widow and next of kin equal to at least $5,000? The instruction should not have been given.

We are not prepared to hold, in accordance with the instructions of the court below, that when the gates were closed the crossing for the time became a part of the defendant's right of way; so that any person venturing thereon, having knowledge, or who by the exercise of reasonable care might have known that the gates were down, became a trespasser.

The court should have, as requested, instructed the jury that the plaintiff was not, under the evidence, entitled to recover, and the judgment must be reversed and the cause remanded.

*Reversed and remanded.*