## Illinois Central Railroad Company v. Margaret O'Keefe, Administratrix of John O'Keefe.

1. COMMON CARRIERS—*Contracts with Passengers.*—It is not necessary that there should be an express contract in order to constitute the relation of carrier and passenger, nor that there should be a consummated contract by the payment of fare; the contract may be implied from slight circumstances and seems to depend largely upon the intentions of the parties.

2. SAME—*Persons Riding upon Free Passes.*—A person riding upon a free pass may recover for personal injuries received through the gross negligence of the company.

3. NEGLIGENCE—*Gross Negligence Defined.*—Gross negligence is defined to be the want of slight diligence or care.

4. ORDINARY CARE—*Getting upon a Train While in Motion.*—The fact that a person, to prevent being left behind, got upon the front platform of the baggage car of a passenger train while it was leaving the station, and being unable to gain admission to the car remained there until he was killed, in consequence of a collision with a freight train coming in the opposite direction, remaining so upon the platform having nothing to do with his death, will not necessarily prevent a recovery by his personal representative.

**Trespass on the Case.**—Death from negligence. Appeal from the Circuit Court of Union County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the August term, 1895. Affirmed. Opinion filed March 7, 1896.

WILLIAM H. GREEN, attorney for appellant.

WILLIAM A. SCHWARTZ, attorney for appellee; KARRAKER & LINGLE, of counsel.

Mr. Presiding Justice Green delivered the opinion of the Court.

This suit was brought by appellee as administratrix of John O'Keefe, to recover damages for his death, which it is averred was caused by the negligent operation and running of appellant's passenger train No. 4 and freight train No. 81, whereby said trains ran together, met and collided, near Makanda, with great force and violence, and thereby occasioned a great wreck, and greatly demolished the engines and cars of said trains, and thereby said John O'Keefe, then and there a passenger on said passenger train, using due care for his personal safety, was then and there crushed, mashed and killed in said wreck; that he left surviving him his widow and two minor daughters, next of kin, and by reason of his death they have been and are deprived of their means of support. Damages $5,000. We have set forth generally, but not in detail, the material averments of the declaration. The plea of general issue was interposed, a trial was had, the jury found defendant guilty and assessed plaintiff's damages at $3,000. Defendant's motion for a new trial was overruled and judgment was entered for plaintiff, on the verdict, for $3,000 and costs. To reverse this judgment defendant appealed and brings the record to this court.

The points presented and relied on by appellant as grounds for reversal, are: that the deceased at and immediately before the time he was killed was not exercising ordinary care for his personal safety in endeavoring to avoid the accident; that deceased was not a passenger on appellant's train at the time he was killed; that at the time of the accident deceased had in his possession a free pass containing the condition that the person accepting it assumes all risk of accidents, and agrees that the company shall not be liable under any circumstances for any " injury to the person, or for any loss or injury to the property of the passenger using this ticket; that appellant was not guilty of culpable negligence and the collision of appellant's two trains was not the result of its negligence; that the court below erred in

striking out from appellant's instruction No. 2 the words, "riding on a free pass," and erred in striking out from appellant's instruction No. 4 the words, "while the train was in motion." The exercise of ordinary care for his personal safety by the deceased when killed is averred, and the question is one of fact to be found by the jury, and they were instructed that "the plaintiff can not recover in this case unless they believe from the evidence that John O'Keefe, deceased, at the time of his death and immediately preceding his death, was exercising such care as a reasonably prudent person will always adopt for the security of his person."

But it is said, because deceased got on the train when it was running three or four miles an hour, and got on at the front end of the baggage car, which was provided with steps and a hand rail, and remained on the platform until the collision occurred, which caused his death, he was guilty of such negligence as would bar the recovery. In this conclusion we can not concur. O'Keefe had a contract with appellant to furnish 25,000 ties along its line of road at an agreed price, and received with this contract a pass, containing the conditions before mentioned, and was having ties made and delivered at Makanda under said contract. Mr. Bolder, for appellant, received ties from O'Keefe and paid him for them. O'Keefe was at Makanda the day before he was killed, expecting to meet Bolder there, who would receive and pay him for the ties delivered there. Bolder was not there and O'Keefe returned to his home in Anna, twelve miles south of Makanda, promising his hands to return to Makanda the next morning. His home was about 150 yards east of the railroad, and 350 yards north of the depot at Anna. When train No. 4 reached the depot, deceased was at breakfast and was told by his wife she heard the train at the depot; he at once started in a run toward the depot. He ran west to the railroad and thence south along the east side of track toward the depot, but the train had started and when he met it, it was running three or four miles an hour. The engineer and conductor saw him on the east side of the track, and saw him get on the steps of the platform on the north end of the first car he

reached. This end of the car had steps, platform and door into the car, the same as a passenger coach. All the other cars on the train were vestibuled. He, no doubt, tried to open the car door, but found it locked and then stood with back against the door as the train passed his house in view of his wife. Afterward he sat down on the platform, facing the west, and was found dead in that position after the collision, with one hand at the guard rail of the car, which was a baggage car. He was killed by the collision of appellant's trains No. 4 and No. 81, the first being a north-bound passenger and the latter a south-bound freight. The collision occurred about ten miles north of Anna and about 7 o'clock A. M. The facts certainly would justify the jury in finding that the deceased exercised ordinary care. His business required him to be at Makanda that morning. No other train could then have carried him there. Its speed was so slow when he boarded it that he could and did get on with perfect safety, and at a place most accessible to him under the circumstances in which he was placed, and there was no evidence to show he did any negligent act while on the train. A prudent business man, under like circumstances, in order to meet an appointment, would have in all probability done as deceased did, and in our judgment would in so doing have acted with ordinary care. Due care may be inferred from circumstances in evidence. C. & A. R. R. Co. v. Carey, 115 Ill. p. 119, and many other cases in our Supreme Court so hold.

That deceased was a passenger on appellant's train at the time he was killed, we think was also proven.

The contract is implied, when one takes passage with a common carrier, that he shall pay a reasonable price for being carried, and that the carrier shall exercise due care, skill and diligence in transporting him safely and speedily to his journey's end, and it is not necessary to prove an express contract, or actual payment. Frink et al. v. Schroyer, 18 Ill. 419, and cases cited there. It is not necessary that there be any express contract, in order to constitute the relation of carrier and passenger, nor that there should be a consummated contract. The contract may be implied from

slight circumstances, and it need not be consummated by the payment of fare. The whole matter seems to depend largely upon the intention of the person at the time he enters the car. N. C. Street R. R. Co. v. Williams, 140 Ill. 228, and cases there cited; Hutchinson on Carriers, Sec. 565.

The evidence shows that O'Keefe was not attempting to steal a ride, but his actions in meeting the train and getting on as he did, in the presence and sight of the conductor and engineer, indicated his intention to board the train as a passenger. The conductor admits he would have permitted O'Keefe to ride in the baggage car, and that likely he testified at the first trial O'Keefe had ridden in the baggage car time and again, and that he (the conductor) started to the baggage car to see about the man he saw get on there at Anna; that the conductor believed O'Keefe to have boarded the train and was on it as a passenger, was fairly inferable by the jury when they consider all the evidence.

Under the evidence and the authorities cited, we hold that the evidence established the fact that O'Keefe became and was a passenger, and appellant owed him the duty of exercising due care, skill and diligence to transport him safely. The contention that because deceased had a pass with the conditions mentioned, appellant was absolved from liability for the killing, is not tenable. In the case of J. S. E. Ry. Co. v. Southworth, 135 Ill. 253, Southworth was a passenger, being carried on an annual pass with similar conditions, and a like contention was set up by the railroad company, and it was held he could recover by proving he received his injury through the gross negligence of the defendant, and the court further held that gross negligence was " the want of slight diligence or care," and an instruction asked for by defendant, " that gross negligence is defined by the law to be willful or intentional negligence," was held to have been properly refused. See, also, Hutchinson on Carriers, Sec. 566. In the case at bar, the collision which caused the death was the result of appellant's negligence, and was undoubtedly gross.

It is further said that the collision was the result of an unavoidable accident, and " the evidence abundantly shows

there was nothing that is ordinarily called negligence chargeable to appellant." The collision was brought about by the order of appellant's proper officer to the agent at Makanda that "No. 4 will run an hour late, Mounds to Makanda." This order was repeated back to the train master, who sent it from Centralia, and O. K'd there and made complete, and immediately thereafter one copy was delivered to the conductor and one to the engineer of appellant's freight train No. 81, then at Makanda. No. 81 had orders to run one hour on the time of No. 4, and pulled out at once south, and collided with No. 4 running north, which was on time and not late, about two miles south of Makanda. This collision, thus carelessly and negligently caused by appellant, resulted in the death of O'Keefe.

The modification of defendant's instruction by striking out the words "riding on a free pass" was not error that ought to reverse this judgment, and so with the modification of defendant's instruction, by striking out the words "while the train was in motion," was entirely proper. It was not claimed, nor was it a fact, that getting on the train "while it was in motion" had anything to do with the death of O'Keefe.

We find the evidence sustains the verdict, and no errors appear requiring the reversal of the judgment, which is therefore affirmed.

Mr. Justice Sample dissents.

On the authority of Abend v. T. H. & I. R. R. Co., 111 Ill. 202, Galena & Chicago Union R. R. Co. v. Fay, 16 Ill. 558, and cases there cited, in my judgment, this case should be reversed.