# The Rockford, Rock Island and St. Louis Railroad Company

## *v.*

## Benjamin Coultas.

1. Negligence—*contributory negligence of plaintiff.* A freight train on which the plaintiff was a passenger, when nearing its destination at East St. Louis, was signaled to stop, and did stop, upon a high trestle work. Just before the train started the plaintiff went out of the car upon

the platform, and while there the train started with a sudden jerk which caused him to fall off on the trestle work and from thence to the ice, a distance of about twenty feet, from which fall he received a personal injury. If he had remained in the car he would have received no injury, and it appears that he made no inquiry of the conductor whether it was safe for him to go out or not, and that he must have known that he could not get off at the place where the train stopped, and that it would soon reach its destination. It was dark and cold at the time: *Held*, that it was highly improper and negligent in him to attempt to go upon the platform in the dark, under such circumstances, without making any inquiry as to the danger, or as to how long the train would stop, and that his negligence and want of care were such that he could not recover, unless it was slight as compared with that of the company.

2. In the same case it was insisted that the company was guilty of negligence in starting its train with a sudden jerk. It appeared that it was the duty of the engineer to stop the train where he did, in obedience to a signal, and to wait until he was signaled to start. The reason of the sudden jerk was, that the train could not be started without first slackening the train, and it appeared that the whistle was sounded for the purpose of setting the brakes for that purpose, and again for taking them off, and there was no other proof of any negligence: *Held*, that even if the engineer failed to ring a bell, it being no regular station where passengers could get on and off, he was guilty of no negligence in that regard, and it also appearing that the train could not be started except by slackening, it being a long and heavy one, the company was not justly chargeable with negligence in starting with the jerk caused by the slackening of the train.

3. Jury—*duty as to evidence.* A jury have no right, arbitrarily, to reject the testimony of an unimpeached witness simply because they desire to find a verdict against it. It is their duty to consider the entire evidence and render their verdict accordingly. It should be a fair and just conclusion from the whole evidence, otherwise a new trial should be awarded.

APPEAL from the Circuit Court of Scott county; the Hon. CHARLES D. HODGES, Judge, presiding.

Mr. CHARLES N. OSBORN, and Mr. N. M. KNAPP, for the appellant.

Mr. ALBERT G. BURR, Mr. WILLIAM BROWN, and Mr. H. CASE, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

This action was brought to recover for personal injuries. Appellee was a passenger on a freight train on appellant's road, and just before reaching the yards at East St. Louis it was signaled to stop. The point where it stopped was on the trestle-work between the round-house and the yards. After the lapse of about ten minutes, appellee was in the act of, or had just stepped on the platform of the caboose car, when the train started up with a sudden jerk and he was thrown off the car on the trestle work and from thence fell on the ice below, a distance of twenty feet or more, and received the injuries complained of.

The negligence charged in the declaration, upon which it is sought to render the company liable, is, the train was started with a sudden jerk without any previous signal by sounding a whistle or ringing a bell, and that such conduct was grossly negligent. None other is alleged or proven.

It becomes a material inquiry, therefore, whose negligence caused the injury? Was it that of appellee, or was it that of the servants of the company?

There were in the "caboose," at the time the casualty happened, the brother of appellee, the conductor, and certainly one, if not two, brakemen, none of whom were injured. It is quite apparent then, had appellee remained in his seat from three to five minutes longer, the accident would not have happened, for, in that space of time, the train would have reached its destination in the yards at East St. Louis.

· Was it prudent, or at all necessary, for him to attempt to go upon the platform? The excuse given for leaving his seat is, that he desired to relieve a want of nature. The reason assigned can hardly be regarded as a satisfactory explanation of his conduct. He must have known the train was about to enter the yards, and was at no regular station for passengers to get on or off. It was dark and cold, and it is perhaps true appellee did not know the extent of the danger

he was about to encounter. This fact itself ought to have imposed upon him a high degree of watchfulness for his personal safety. The conductor was in the car with him, and it seems to us it was highly improper—if we characterize it by no stronger term—to attempt to go upon the platform in the darkness of night without asking the conductor whether it was prudent, or whether the train would stop long enough for him to do so with safety. If he did not know why the train was stopped or the length of time it would probably remain, he could have learned the facts by application to the conductor. This was his plain and reasonable duty.

It could not reasonably be insisted, the cause for which he says he desired to leave his seat in the car was so pressing he could not wait five or ten minutes until the train should reach its stopping place in the yards. The conclusion, therefore, seems almost irresistible, that, in going upon the platform without making the proper inquiries of the conductor, appellee was himself guilty of a want of ordinary care. No prudent man would do it. His experience on that train, if he had never been on any other, must have taught him the train was liable to be started suddenly, with a jerk more or less violent, and on the platform he would be in imminent danger of being thrown off.

The fact that appellee was guilty of some degree of contributory negligence, raises the question of the comparative negligence of the parties.

We had occasion, in the recent case of the *C. B. and Q. R. R. Co.* v. *Van Patten,* 64 Ill. 510, to restate the doctrine of comparative negligence as held by this court in numerous cases. The principle, as there recognized, is, that although plaintiff himself may have been guilty of negligence, yet, if it is slight, and that of the party causing the injury gross in comparison, he may recover, notwithstanding his own negligence. But if plaintiff's negligence was the primary cause of the injury, and the defendant was guilty of no want of ordinary care, a recovery can not be had.

26—67th Ill.

In view of these principles we will consider briefly the conduct of the servants of the company.

The train was approaching the end of its route at East St. Louis and was within a few hundred yards of its stopping place. The evidence shows it was the duty of the engine-driver to obey signals from those in the yards, whose duty it was to receive the train on its arrival. He received the usual signal to stop, and did so, and it became his duty to wait until he should get a like signal to go forward. The conductor had no duty to perform at that point in the management of the train.

The principal ground of complaint is, the engine-driver started without giving signals of his intention by ringing a bell. It is very doubtful whether it was his duty to cause the bell to be rung. It was at no station, and of what possible benefit could it be to passengers in the car. The train was on the trestle-work where he knew passengers could neither get on nor off with safety, and he could have no reason to expect any one was endeavoring to do so.

There can scarcely be a reasonable doubt the whistle was sounded. It is distinctly sworn to by the engineer, one brakeman and the conductor, and they all state such facts as make it almost impossible for them to be mistaken.

The engineer states he endeavored to start the train without taking up slack, but was unable to do so, and in this he is corroborated by the brakemen and the conductor, who distinctly noticed the fact. He then slackened up the train. This is done by setting the brakes on the rear car and then pushing the others back against it. The signal in use to indicate to the brakeman to set the brakes, is one sharp "toot" from the whistle, and to let them off so the train may start, the signal is given by two like sharp sounds. It is not probable the brakes could have been set except in obedience to the signal from the engine-driver, and on a level road it would have been difficult, if at all possible, to slack the train had not the brakes been set. The evidence shows it would

have been impracticable to start the train, coupled as it was, with a sudden jerk like that described by the witnesses, unless it had first been slacked. These facts show, beyond any reasonable doubt, the whistle was sounded. It is the usual signal for starting the train when not at a station, and was sufficient to have put appellee on his guard. The jerk given was not unusual on freight trains. It was a very long and heavy train, and the evidence shows, conclusively, it could not have been started without slackening. This necessarily produces a jerk more or less sudden and violent. It is not easy for the engineer to guage, accurately, the amount of steam necessary to move a heavy train. A little too much will cause a violent jerk. There is not a witness who declares the engine-driver did not use care and skill in the effort to set the train in motion, or states facts from which negligence might be inferred. He gave the usual signal, viz: sounding the whistle. He was not required by any rule of the company or any regulation necessary to the protection of the passengers, to ring a bell, and was guilty of no negligence in that regard.

The jury must have disregarded the evidence of the engineer, brakeman and conductor as to the degree of care used in the management of the train, and relied solely on the negative testimony of the brother of appellee and the brakeman Rodecker. The evidence of appellant's witnesses was, in no way, discredited. There was, however, a cloud on the testimony of appellee's witness Rodecker. A number of witnesses state his reputation for truth was bad, and his testimony, to say the least of it, was inconsistent in some of its parts. There was no valid reason for rejecting the evidence of so many unimpeached witnesses and relying solely on his. We have said, a jury ought not, arbitrarily, to reject the testimony of an unimpeached witness simply because they desire to find a verdict against it. It is their duty to consider the entire evidence and render their verdict accordingly. It should be a fair and just conclusion from the whole evidence.

In the view we have taken, the ends of justice will be subserved by submitting this cause to another jury, to be instructed on the question of the comparative negligence of the parties as that doctrine is laid down by this court in its previous decisions.

The judgment is reversed and the cause remanded.

*Judgment reversed.*