## W. T. Kerr v. Chicago, R. I. & P. Ry. Co.

1.  CONTRIBUTORY NEGLIGENCE—*Precludes a Recovery.*—A passenger on a railway train who assumes a dangerous position on the platform of the train while it is in motion, contrary to the rules of the company, and is injured in consequence, is precluded from recovering any damages.

**Trespass on the Case,** for personal injuries.   Error in the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.   Heard in this court at the October term, 1901.   Affirmed.   Opinion filed February 13, 1902.

ROSENTHAL, KURZ & HIRSCHL, attorneys for plaintiff in error.

W. T. RANKIN, attorney for defendant in error; ROBERT MATHER and B. S. CABLE, of counsel.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Plaintiff in error was injured August 22, 1892, by falling or being thrown from the platform of one of the passenger cars of a suburban train of defendant, while going at the rate of about twenty miles per hour around a curve over the frogs at the intersection or junction of its tracks with those of the Baltimore & Ohio Railway near Beverly station, a suburb of Chicago.   He brought suit to recover for his injuries, a trial of which, at the close of all the evidence, resulted in a verdict of not guilty, directed by the court, and judgment thereon, to reverse which the writ of error herein is prosecuted.   The declaration consists of six counts, alleging, in each, different causes of negligence,

which, in view of the conclusion reached, it seems unnecessary to state.    The plea is not guilty.

It appears from the evidence of Mr. Kerr, the plaintiff in error, that he was, at the time of the injury, and had been for twenty years previously, a reporter for a commercial agency, and had for many years been traveling on railway trains.    For six years previous to his injury, as a rule, he had taken defendant's suburban train at 6:40 P. M., in Chicago, to go to Beverly Hills, where he resided.    He says that the trains at that time made very short stops, and it was necessary for one to be out of the doors and on the platforms in order to get off the train before it was in motion again. He further testified:

"On the evening in question I had played cards all the way down, as we did every evening; I played one hand after we left Brainerd station, which is the last station before reaching Beverly.    Brainerd Junction, where the Baltimore & Ohio turns out, is between Beverly station and Brainerd station, I should judge about a thousand feet or such a matter from Beverly station.    On the evening in question I had played cards; played one hand after leaving Brainerd; got up from the seat, took the card board and took it into the baggage end of the car and put it into what would be, I suppose, a mail box, where they throw the mail sacks in, a large box that sat there in the car.    I had a sack containing a dozen bananas, I believe.    I took this and stepped to the door, and I had just stepped on the platform when the car, striking the curve there, striking that switch place, gave a specially hard lurch and I went off; how I got hold of the railings, I don't know, but I found myself dragging under the cars.    Knowing that a short distance below, the target wires were strung along close to the track, and knowing that I could not hold on, because my arms were not very strong, having done no manual labor for years, I was losing my grip, and I dropped off.    I went off up near the first target-pole, below the intersection of the two roads, the two tracks, with my leg broken."

On cross-examination he says:

"I had been riding over the track since the curves were put in for about a year.    Sometimes there was a lurch, as there often is around a curve—a little lurch of the train.

There is bound to be a slight lurch going over the curve to make it natural for a man standing to grab at something; I never saw a man fall. * * * It is natural in going around a sharp curve, or turning a sharp corner like this, it would be very natural for the train to lurch there, because the curve is so short. I should say the train was going about twenty miles an hour when I fell. It had not stopped for the junction point at all, nor slowed up; just kept running straight through from Brainerd to Beverly, at twenty miles an hour, over these frogs and around this curve, and that caused me to fall off. I was in the smoking-car. We were about at the frogs when I got on the platform; was carrying a paper of bananas. When I went out on the platform I took hold of the railing on the side with my left hand; must have been carrying the bundle in my right hand; can not say how often I had noticed the lurching of the train; not every night; it would sometimes roll more than others; sometimes I would not notice it at all."

Q. "Did you always go out on the platform so far ahead?" A. "Almost invariably."

Q. "Why was that?" A. "Because the train did not stop there long enough for the people to get off."

Q. "How many people usually got off there at Beverly?" A. "Sometimes two, sometimes three, and sometimes a dozen."

He further says that he knew of his brother-in-law, with his wife, being carried past this station; that the train "didn't stop at all sometimes; they simply slowed up and we had to get off as we could."

Other witnesses corroborated Mr. Kerr to the effect that passengers had to go to the door of the cars to get off, in order not to get carried by the station, because they say that the train just slacked up at Beverly Hills. One witness says: "They hardly gave you time to get off the trains; anyway, they don't give you time to get off the trains."

There is no conflict in the evidence as to Mr. Kerr having gone out of the car and upon the platform at the time and under the circumstances he states that he did.

The conductor testified that the stop at Beverly Hills was usually from fifteen to thirty seconds, and the train collector testified that the stops were all the way from ten to thirty-five seconds at this station; also that it was the custom to

let people get on and off.    On a brass plate, which was upon all the coach doors of the train, in plain view, was a sign in large plain letters, viz.:   "Passengers are not allowed to stand on the platform."

There is no claim, nor is there any evidence to support such a claim, that defendant in error was guilty of willful negligence, and we deem it unnecessary to consider the negligence charged, inasmuch as it seems plain from the evidence, considered in the light of the decisions in this State, that Mr. Kerr was guilty of contributory negligence which precludes any right of recovery for his unfortunate injury.

In the case of Quinn v. Ill. Central R. R. Co., 51 Ill. 495, which was a case of death caused by the plaintiff's intestate, a passenger, falling from a moving railway train while standing on the platform, it was held there could be no recovery, because of contributory negligence.   The trial court withdrew the case from the jury.   The Supreme Court gave thorough consideration to the case, and in its disposition, among other things, say :

"It appears that the deceased, as one of a large funeral party, had taken passage on the cars of the appellee at Cairo, for a point a few miles distant from that city.   The cars were quite full, but the conductor thinks there were unoccupied seats in one of them, and there was standing room in all.   The deceased, with several other persons, was standing on the platform when the conductor passed along collecting the fares.   In making change for a bank note, which the deceased paid for his fare, the wind carried away the paper as it was passing from the hand of the conductor to that of the deceased.   The latter attempted to regain it, and as he was then standing on the edge of the platform, or on the step, he lost his foothold and fell to the ground.   As he fell he struck against the embankment, was thrown back under the cars and killed.   This brief statement of the facts, about which there is no controversy, shows there is no ground whatever for maintaining this action.   It was the negligence of the deceased, not that of the railway company, which caused his death.   He was chargeable with extreme carelessness, and we can not see on what grounds any material negligence can be attributed to the company.   He had voluntarily taken a dangerous position, which resulted in his death, and there is no reason why the company should be made to pay damages therefor."

On rehearing, the court quotes with approval the following language from Willis v. R. R. Co., 32 Barb. 398:

"If the plaintiff in this case had been thrown off the platform by a jerk or movement of the train, he would have encountered a danger incident to his position, and although the jerk might have been occasioned by high and unusual speed, or other mismanagement, still, at the most, the fault would have been mutual."

The ruling in this case has been frequently cited in subsequent decisions, and the principles there announced are approved, in substance, by the following cases: R. R. Co. v. Coultas, 67 Ill. 398; Abend v. R. R. Co., 111 Ill. 202–10; Hoehn v. Ry. Co., 152 Ill. 223–9; R. R. Co. v. Lane, 83 Ill. 448–52; Taylor v. R. R. Co., 10 Ill. App. 311; Ry. Co. v. Reilly, 40 Ill. App. 416, and cases cited; Ry. Co. v. Allender, 47 Ill. App. 484–94.

Counsel for plaintiff in error rely upon several decisions of the Appellate Courts, affirmed by the Supreme Court, which, it is claimed, sustain their contention that the question of contributory negligence in this case should have been submitted to the jury. We have examined them all, and think they are not applicable to the facts here presented. Two of them are street railway cases and two others were cases showing that the trains were moving slowly when the passenger went upon the platform.

By reason of the contributory negligence of plaintiff in error in going upon the platform of the train while it was moving, as he says, at the rate of twenty miles per hour around a curve, where he knew there was liable to be a lurch of the train, one thousand feet from the station where he desired to get off, we are of opinion that he is precluded from recovering any damage. That defendant had not in the past, as the evidence tends to show, stopped its trains long enough to give passengers sufficient time to leave them in safety, does not excuse the negligence of plaintiff in going upon the platform of the rapidly moving train as he did. Had he remained within the coach, as he should have done, no doubt he would have escaped all injury.

The judgment of the Superior Court is therefore affirmed.