634     APPELLATE COURTS OF ILLINOIS.

Savage v. Ill. Cent. R. R. Co., 164 Ill. App. 634.

# John H. Savage, Administrator, Appellee, v. Illinois Cen= tral Railroad Company, Appellant.

## Gen. No. 5464.

1. PASSENGER AND CARRIER—*effect of riding upon platform of coach.* Except under special circumstances a passenger is negligent if he rides or goes upon the platform of a coach while the train is traveling between stations and if he is injured because of his presence upon the platform while the train is running the carrier is not liable to him in damages for his injuries.

2. PASSENGER AND CARRIER—*child going upon platform.* A carrier is not liable for causing the death of a child between the ages of seven and eight who was traveling with his mother and who was temporarily left by her in the seat of the coach and who in disobedience of her instructions passed through the door of the coach which had been left open (the weather being hot) and went upon the platform and in consequence fell from the train and was killed.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will county; the HON. C. B. CAMPBELL, Judge, presiding. Heard in this court at the April term, 1911. Reversed. Opinion filed October 13, 1911.

SNAPP & HEISE, for appellant; W. S. HORTON and J. G. DRENNAN, of counsel.

FREDERIC D. JORDAN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

On June 21, 1909, Mrs. Ella I. Clark was on her way from Iroquois, Illinois, to Otia, Michigan, accompanied by her three children by a former husband, Frank Pugh, aged nearly eight years, Russell Pugh, aged five and a half years, and Ella Pugh, aged about four years. At Kankakee Mrs. Clark left the Big Four train on which she had been riding, and changed, with her cihldren, to an Illinois Central train for Chicago. There

was no smoking car on this Illinois Central train and the passenger coach in which she found seats for herself and her three children was next to the baggage car. The train proceeded north, stopping at all stations. Just before or just after this train stopped at Monee, a station in Will county, Mrs. Clark went with her little girl to the front, or north, end of the passenger coach in which she was riding. The front door of the car was partly open, but not so far open as to interfere with her entering the toilet room, and she left that door open as it was. She left her son, Russell, asleep, and told the other boy, Frank, to sit still while she was gone. Soon after this train left Monee, and while Mrs. Clark was still in the toilet room, these two boys were seen to run up the aisle towards the front, or north, door of the car. They were seen to pass through the car door, partly open, and disappear to the right. Some of the passengers notified the trainmen, the crew received orders at the next station to back up and hunt for the boys, which was done, and they were found dead alongside the track and east thereof. This suit was brought to recover damages for the death of Frank Pugh, the older of the two boys, for the benefit of his mother, sisters and surviving brother. The declaration contained two original and three additional counts. In one count the negligence of defendant was alleged to consist in leaving the trap doors of the vestibule open and the front door of the car open, in others the leaving of the trap doors open, in others the charge was that the car was negligently safe-guarded, managed, operated and cared for. Each count charged that appellee's intestate was in the exercise of due care for his own safety. One count also charged that he was in the care of his mother and that she was in the exercise of due care for his safety. One count charged that he was killed through no fault of his own or of any one in charge of him. Upon a jury trial a verdict was returned in favor of plaintiff for $7,600. On a motion

636    APPELLATE COURTS OF ILLINOIS.

Savage v. Ill. Cent. R. R. Co., 164 Ill. App. 634.

by defendant for a new trial, the trial court ordered plaintiff to remit $4,100, and upon this being done, the motion for a new trial was overruled and judgment was entered in favor of plaintiff for $3,500, from which defendant below appeals.

The passenger coach in which Mrs. Clark was riding with her children was equipped with what are known as wide vestibules. Such a vestibule consists of a trap, and a door on either side of the door leading directly into the car. The trap, when closed, is merely an extension of the car platform and acts as a roof over the car steps. The vestibule door, when closed, is nearly flush with the side of the car, but, as this door, when open, must fold back over the car steps, it cannot extend as low as the bottom car step. Therefore, when the vestibule door is closed and the trap is open, there is a hole at the bottom of the steps, between the bottom step and the bottom of this vestibule door, about 14 inches high by 28 inches long. The evidence shows that at the time of the accident here in question the trap on each side of the vestibule at the front, or north, end of this passenger car was open, or raised, and that the vestibule doors were closed.

The baggage car, just ahead of this passenger car, had no such vestibule and its platform was only about 16 inches wide in the center and about 6 inches wide at the sides of the car, and it was fitted with hand rails, grab irons and foot stirrups for the use of trainmen in boarding and leaving such baggage car at the end. When this baggage car was coupled to this passenger coach, there was a passage way from the coach to the baggage car about as wide as a car door, and between the end of the baggage car and the vestibule of the passenger coach there was enough space for a man to pass. Without an open space there these cars could not go around a curve. There is no direct evidence in the record from which it can be determined whether these boys, after passing out of the north, or front, door of

the passenger car, fell or jumped through the hole between the car steps and the bottom of the vestibule door, or whether they fell or jumped off from the narrow platform on the end of the baggage car. There was evidence that as they passed north in the car, the younger boy was ahead and was crying and the older boy seemed to be trying to catch hold of the younger, and there was other evidence that the older boy was ahead. The evidence is in conflict as to which body was found further south, that is, as to which one left the train first. In matters where the evidence is uncertain, counsel have conflicting theories as to what the fact must have been. Under the rules of the company, a child of the age of appellee's intestate was required to pay half fare. There is evidence that the mother avoided paying his fare by telling the conductor that he was under five years of age, and other evidence that she made no statement on the subject. The correctness of an instruction given for appellee is questioned. We, however, find it only necessary to consider the question whether the evidence establishes a cause of action in favor of appellee against appellant.

The natural office or purpose of a platform on a railway passenger car is to furnish a place upon which passengers may enter and leave the car. It is not intended as a place whereon a passenger may ride while the train is traversing the country. There are exceptions to this rule in behalf of a passenger going to or from a dining car or an observation car to which he has been impliedly invited by the company, or searching for a seat on a crowded train, and the like. Except under some such special circumstances, the passenger is negligent if he rides upon or goes upon the platform while the train is traveling between stations, and if he is injured because of his presence upon the platform while the train is running, the railway company is not liable to him in damages for his injuries. These rules have often been recognized and applied. In Quinn v.

638    APPELLATE COURTS OF ILLINOIS.

Savage v. Ill. Cent. R. R. Co., 164 Ill. App. 634.

I. C. R. R. Co., 51 Ill. 495, a passenger, riding on the edge of the platform or on the step, lost his foothold while the train was running and fell and was killed. The administratrix brought suit to recover damages for his death. The supreme court held that the passenger had voluntarily taken a dangerous position which resulted in his death, and that there was no reason why the company should be made to pay damages therefor, and that no reversible error was committed in directing a verdict for the defendant, as a verdict for the plaintiff could not have been permitted to stand. On a petition for a rehearing the court reviewed the question, mentioned the fact that, though all the seats may have been occupied, there was abundant standing room in the cars, and adhered to its decision that the company was not liable. In R. R. I. & St. L. R. R. Co. v. Coultas, 67 Ill. 398, it was treated as a want of ordinary care for a passenger to go upon a platform while the train stood upon trestle work in the dark and away from a station, without first making proper inquiries of the conductor. In P. & R. I. R. R. Co. v. Lane, 83 Ill. 448, where a passenger left his place in a passenger car and went to the baggage car and was there killed while the train was running, when he would not have have been killed if he had remained in the passenger car, it was held that the company was not liable to his administratrix unless it was guilty of wanton misconduct. In Ward v. C. & N. W. Ry. Co., 165 Ill. 462, this rule was stated and approved in language quoted hereafter on another subject. In C. & A. R. R. Co., v. Fisher, 141 Ill. 614, a case within the exceptions above stated, the authority of Quinn v. I. C. R. R., *supra*, was recognized. In C. & W. I. R. R. Co. v. Newell, 212 Ill. 332, which also came within the exceptions above stated, as the plaintiff there was compelled by the crowded condition of the cars to ride upon the platform and was thrown from the train by its rapid motion while rounding a curve, the court recognized the

ordinary rule that it was negligence for a passenger to ride upon the platform of a moving railway train. In Taylor v. D. O. & O. R. R. Co., 10 Ill. App. 311, it was held that plaintiff, a passenger, was guilty of such negligence in riding on the platform of a passenger car at the time he received the injury that he could not recover, unless it was wantonly inflicted. In C. & N. W. Ry. Co., v. Rielly, 40 Ill. App. 416, plaintiff's intestate, a passenger, was riding on one of the steps of a passenger car, next to the engine or on the footboard at the rear of the tender of the engine, and was there killed in a slight collision. It was held that his administratrix could not recover against the company, and many authorities are there cited. In Kerr v. C. R. I. & P. Ry. Co., 100 Ill. App. 148, plaintiff went upon the platform of the car upon which he was a passenger when the train was running rapidly around a curve as it approached his station, and was thrown from the platform and injured, and brought suit to recover damages for his injuries. The trial court directed a verdict for defendant, and that action was affirmed. In Krug v. C. P. & St. L. Ry. Co., 155 Ill. App. 114, where a passenger was thrown from the platform of a moving passenger train and was killed, when the evidence showed that there was plenty of room in the coaches, a judgment for the administrator was not allowed to stand.

The rule above stated appears to have the general approval of other courts. Thus, in Hickey v. B. & L. R. R. Co., 96 Mass. 429, where plaintiff's intestate went upon the platform of the passenger car in which he had been riding, while the train was approaching his station, and there received fatal injuries, a recovery was denied. The court there said:

"If sufficient and suitable provision be made within the cars for all the passengers, the managers of the train are not under obligation to restrict them to their proper places, nor to prevent them from acts of imprudence. If they voluntarily take exposed positions,

with no occasion therefor, nor inducement thereto, caused by the managers of the road, except a bare license by non-interference, or express permission of the conductor, they take the special risks of that position upon themselves.''

Many cases are cited in 3 Thompson on Negligence, sec. 2947, where the principle here under discussion is thus stated:

''The general rule is that if a passenger elects to ride upon the platform of a steam railway car, without any necessity, real or apparent, for taking that position, and while so riding, is injured under such circumstances that he would not have been injured if he had not taken that position, * * * he can not recover damages from the company. In other words, for a passenger to ride in a position of such obvious danger, without any real or apparent necessity for so doing, is generally regarded as negligence *per se*.''

Section 2948 is as follows:

''The passenger is not excused in taking such a dangerous position by the mere fact that he can not get a seat inside the car, provided there is standing room inside, although his position when so standing would be one of discomfort; nor, when the train is running at a speed of twenty-five miles an hour, because the passenger, a boy fifteen years old, goes out upon the lower step of the platform of the car, in order to vomit, there being plenty of standing room for the purpose of vomiting in the car. Nor does the fact that a passenger upon the platform of a railroad car at the time the train started, was looking for some one by whom to send a message to his family, excuse his contributory negligence in case he is injured. If, while riding in this improper and dangerous position, the passenger is thrown off the train and injured, he can not recover damages, although the accident may have been in part due to the negligent manner in which the train was run. Nor will this conclusion be altered by the fact that the company may not, at the time, have a brakeman, upon the platform to warn, assist or protect the

passengers although its rules require a brakeman to be there." The exceptions to the rule are stated in succeeding sections. In 4 Elliott on Railroads, sec. 1630, many authorities are cited in support of the proposition that it is negligence, under ordinary circumstances, to stand upon the platform of a moving commercial railroad car.

The non-liability of a railroad company in such a case does not rest solely upon the ground that the passenger is negligent in taking such an exposed position. The implied contract of the common carrier of passengers upon an ordinary steam railway is to carry them within its passenger cars. It provides platforms by which passengers may enter and leave the cars when the train is at rest, but it does not contract to carry its passengers upon the platforms. Railroads have a right to run their passenger trains rapidly. The public demands rapid service. It is a matter of common knowledge that rapid running gives more or less of a swaying motion to a train, even upon a straight track. It is practically impossible that a track shall be absolutely level for any considerable distance. The necessary swaying of a rapidly running train makes the platform an unsafe place. Every railroad changes its direction at times, and some railroads have many such curves. A person upon a platform cannot see ahead and know when the direction is to change. The railroad company provides seats where its passengers may ride in safety inside its cars. It has a right to provide such safe seats in its cars, and its passengers cannot require it to carry them upon its platforms. No statute requires it to carry passengers upon its platforms or to furnish them protection while riding there. The railway company violates no duty which it owes its passengers by the ordinary swaying of its trains and by running rapidly around curves. A passenger who goes upon the platform while the car is running, unless

within some of the exceptions, places himself beyond the protection of his contract. If he is injured there when he would not have been injured if he had remained in his seat in the car, the company has not been negligent in its conduct towards him, it has violated no contract it impliedly made with him and no duty which it owes him, and such injury therefore gives him no cause of action against the company operating the train.

This was a vestibule train. The effect of that fact upon the general rule which we have stated, was under consideration in Ward v. C. & N. W. Ry. Co., *supra*. The trial court there had sustained a demurrer to the declaration. That declaration contained averments that it was the duty of the defendant, among other things, to keep the doors of the vestibule closed and the vestibule lighted, and that these and other duties were not observed by the defendant and in consequence plaintiff fell and was injured. After stating these allegations, the court said:

"It will thus be seen that the statements as to obstructions, want of light, improper condition of the vestibule doors, etc., are merely matters explanatory of the manner in which the defendant was thrown to the ground, and are only material provided it is sufficiently shown that he was justified in attempting to alight from the car at that place,—that is to say, it was not, as a matter of law, the duty of the defendant to keep the doors of the vestibule closed, the vestibule lighted, the ground near the track at that particular place free from gravel and kept lighted, etc., as an independent proposition. As a matter of law the plaintiff had no business to go upon the platform of the car, or right to attempt to leave it at a place other than the station, unless he was led to do so by some act of the employees of the defendant reasonably calculated to mislead him as to where the station was, and therefore it was a matter of no consequence to him whether the doors of the vestibule were closed, the vestibule lighted

or the yard free from obstructions or not. On the other hand, if he was justified in attempting to alight from the train at that place, and failed to do so safely, exercising due care, and his injury was caused by reason of any of the omissions or obstructions, then he would be entitled to recover, independently of such omissions or obstructions. So the question upon each of these counts must be, does it appear that he was reasonably justified in attempting to get off at the time alleged?''

While that case was reversed because one of the eleven counts was held good, yet the general rule of law we have stated was held applicable to a passenger car equipped with a vestibule. In the case before us the question does not relate to a vestibule by which passengers were to enter and leave this car, as it was that day being operated. This train ran from Centralia to Chicago. The north end of the car was next to the baggage car. The vestibule doors at the front end of this car were kept closed. No passenger entered or left this car by the front end or was in this vestibule, till these children went into it. The passengers who rode in that car all entered and left it by the rear entrance. No passenger had any occasion to enter it. It was the way to the baggage car, to which the conductor had occasion to have access, but no passenger had any right to go to the baggage car, and no passenger had any right on any platform while the train was running, and no occasion to be on this platform at any time. It was a hot and murky day in June, and it was evidently to furnish a draft of air through the car that the front door of the car was left half way open, and the trap doors over the steps were left up. We regard it as clear, from the rules of law above stated, as applied to the situation on the platform of this car, that if an adult passenger had gone upon this platform at this time, and had fallen by reason of its swaying motion, either down the steps and under the vestibule door or off the end of the narrow platform on the rear

of the baggage car, or had voluntarily attempted to leave the train by either of these ways, and had thereby been injured or killed, the appellant would not be liable for the injury.

At the time of this accident Frank Pugh was seven years, eight months and thirteen days old. Should a different rule of law apply in this case because of his infancy? Mrs. Clark boarded this train at Kankakee. Frank was the oldest of the three children whom she had with her. There was a porter on the train. He assisted Mrs. Clark and her children upon the train, carried her package into the car, found a seat for her and her children near the rear of the car, and saw her and her children safely seated. We are of opinion that appellant had the right to presume that the mother would take care of her children. We do not think that appellant was required to supply employes to watch over the children on the train, nor to see that its train was so arranged that no child upon it could get into a place of danger and be injured. Vestibuled cars are a comparatively recent invention. Many trains are yet run without them. We do not think it has ever been held that all doors on such trains must be kept closed in hot weather while the train is in motion because some child might go upon the platform and be injured or killed. There were open windows upon this car. Must the company close the windows or guard them so that no child, travelling with its parents, may by any chance crawl out of them? Must children in the aisle be protected by the company from the danger of falling as the train rounds a curve? On the contrary, we conceive it to be the duty of a parent travelling with her minor child to take care of it, and we hold that the railroad company does not assume the responsibility of such care. Moreover, there was a porter upon this train whom the mother could have called to her assistance. Instead of seeking help from any of the trainmen, she trusted Frank to obey her directions to sit

still while she went to the toilet with her little girl. He failed to obey her. No one knows why the two boys went to the front end of the car and into the vestibule and off the train. They may have been seeking the toilet where their mother had gone. When they reached the vestibule the swaying of the train may have thrown them down the steps or they may have gone upon the narrow platform of the baggage car and gone to the edge of the car and then been thrown off by the motion of the train. It is quite as probable that they thought their mother had left the train, and themselves voluntarily got off the train to join her without realizing the speed of the train and the danger. It is worthy of note that there is neither allegations nor proof that this was advertised or held out to the public as a vestibuled train or that Mrs. Clark knew that feature of the train beforehand and relied thereon in taking passage; and that this case therefore is not within the spirit of certain cases where those conditions were alleged and proved. The accident was most lamentable, and every one must sympathize with the unfortunate mother, but that is true of every case where a human being has been injured or killed, and that sympathy cannot determine who is responsible. We do not see how we can hold appellant responsible for this accident without laying down the rule that carriers of passengers must provide nurses or special protectors for infant children riding with their parents on its trains, and we are of opinion that the law imposes no such duty upon them.

The judgment is therefore reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment: We find that appellant did not violate any duty which it owed to appellee's intestate, and was not guilty of the negligence charged against it in the declaration.