160    APPELLATE COURTS OF ILLINOIS.

Blair et al. v. Chicago, Ottawa & Peoria Ry. Co., 205 Ill. App. 160.

## William Blair and John Patten, Administrators, Appellees, v. Chicago, Ottawa & Peoria Railway Company, Appellant.

### Gen. No. 6,365.

1. CARRIERS, § 428*—*when passenger riding on platform guilty of contributory negligence.* In an action to recover for the death of a passenger who, while standing on the platform of an interurban car going at the rate of about thirty miles per hour, in some way fell through an opening left by an open vestibule and trapdoors as the car approached the station at which the deceased was to alight, where it appeared that there was room inside the car and there was a printed notice posted in the vestibule informing passengers that they were not allowed to ride on the platform or steps, *held* that plaintiff's intestate was guilty of contributory negligence.

2. CARRIERS, § 386*—*when not guilty of negligence in leaving trapdoors of car open.* In an action to recover for the death of a passenger who, while standing on the platform of an interurban car going at the rate of thirty miles per hour, in some way fell through an opening left by open trapdoors as the train was approaching the station at which the deceased was to alight, where it appeared that there was room inside the car and a notice was posted in the vestibule informing passengers that they were not permitted to stand on the platform or steps, *held* that the defendant was not guilty of negligence.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the October term, 1916. Reversed with finding of facts. Opinion filed April 19, 1917.

SNAPP, HEISE & SNAPP, for appellant.

FRANK H. HAYES and JOHN W. DOWNEY, for appellees.

MR. JUSTICE CARNES delivered the opinion of the court.

This is an appeal by the Chicago, Ottawa & Peoria Railway Company from a judgment of $4,500 obtained

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by the appellees, William Blair and John Patten, administrators, for the death of their intestate, James Patten, while a passenger on appellant's interurban car August 28, 1913, caused by falling from the rear platform of the car.

Before the time in question James Patten, about sixty-five years of age, lived on a farm about two miles northeasterly from the City of Morris, and had lived there many years. On that day there had been a home-coming celebration at Morris attended by many people. He went there from his home in one of appellant's cars, and started from Morris to so return about six o'clock p. m. The car which he boarded was a large interurban car with a rear inclosed platform, made to be opened and closed at the sides by vestibule doors and trapdoors in the usual manner of construction of that kind of vestibule. The car had two compartments, the smoker being in front. When Patten got on the car there was no one standing inside in the aisle. The seats of the rear compartment were mostly occupied, but there was room for two or three more passengers to sit there. There was also room in the front or smoking compartment for more passengers to sit. There was a printed notice posted in the vestibule informing passengers that they were not allowed to ride on the platform or steps of the cars. Patten and four others remained on the platform apparently without investigating whether there were or not seats inside. Probably Patten did not care to sit, and quite likely a vacant seat would not be observed by a careless glance inside, but it would have been apparent that the aisle was empty. It was a commercial railway, organized under the general railroad act, running easterly from Princeton and other points through Ottawa and Morris to Joliet, doing a passenger, freight and express business.

The conductor collected Patten's fare after the car

left Morris without objecting to his or the other passengers standing on the platform. The car made frequent stops in the cities and towns through which it passed and at various places in the country, after the manner of interurban cars. After leaving Morris two or three of the next stops were to let passengers off at the south side of the car, and the vestibule door and trapdoor to the south were left open. As the car was nearing the point at which Patten was to alight, it was running at a speed of thirty or forty miles an hour, and Patten in some way fell through this opening and received injuries from which he soon died. Appellee's theory is that he must have thought because of the speed of the car that it was not going to stop at his crossing, and that he started to attract the conductor's attention and ask him to stop there, and in so doing fell. It is not clear from the testimony of the passengers on the platform how or why he fell. The road was straight and the rails and bed in good condition. There was no unusual motion of the car and nothing to account for his falling except that he stepped too near the edge of the opening and lost his balance.

Appellees in their argument here urge as negligence of appellant that the car was running at a high and dangerous rate of speed; that the doors at the south side of the vestibule were left open, and say that the high rate of speed and failure to close the vestibule doors and running the cars at such rate of speed approaching the station were the proximate cause of the injury. The declaration counted on such alleged negligence, and averred due care on the part of the plaintiff's intestate. The general issue was pleaded.

Appellant strongly insists that under the above state of facts James Patten was negligent as matter of law, and that the court erred in overruling its motion to direct a verdict, and quotes from Thompson on Negligence, vol. 3, sec. 2947:

"The general rule is that if a passenger elects to ride upon the platform of a steam railway car without any necessity, real or apparent, for taking that position, and while so riding is injured under such circumstances, that he would not have been injured if he had not taken that position, he cannot recover damages from the company. In other words, for a passenger to ride in a position of such obvious danger, without any real or apparent necessity for so doing, is generally regarded as negligence *per se*."
And sec. 2949:

"A real or apparent necessity would excuse the passenger in so riding, and repel the imputation of contributory negligence so that if, while so riding, he is injured through the negligence of the carrier, he may recover damages. The real necessity for riding in such a position is generally held to exist where the cars are so crowded that the passenger cannot secure standing room inside."
and cites *Quinn v. Illinois Cent. R. Co.*, 51 Ill. 495, where the court held that a passenger voluntarily placing himself upon the steps of the platform of a car, holding onto the railing while there was abundant room in the car, even though the seats were full, and fell to the ground, not in consequence of a collision, or broken rail, or other fault of the company, was grossly negligent, and quoted with approval from a New York case: "If a man places himself in such position that in the ordinary movement and conduct of the train he is exposed to danger, he may justly be said to be negligent of his security, and must take the consequences if he is injured." [*Willis v. Long Island R. Co.*, 32 Barb. 399.] This case was cited in *Chicago & A. R. Co. v. Fisher*, 141 Ill. 614, 628, and distinguished on the ground that in the *Quinn* case, *supra*, there was abundant room in the cars, and the deceased voluntarily and without any necessity therefor placed himself upon the platform of a car, although in the *Quinn*

case there was not so abundant room in the car as in the present case. It was also cited by this court in *Savage v. Illinois Cent. R. Co.*, 164 Ill. App. 634, where the authorities on the question of a passenger's negligence in riding upon the platform were very fully reviewed and the court reached the conclusion that except under special circumstances a passenger is negligent if he rides or goes upon the platform of a coach while the train is traveling between stations, and if he is injured because of his presence upon the platform while the train is running, the carrier is not liable, and reversed without remanding a judgment in favor of the plaintiff for damages for the death of a person riding upon a coach platform.

It is said in 6 Cyc. 652, that a passenger who rides in a place not intended for passengers, and which is more dangerous than the place where passengers are permitted to ride, is thereby charged with contributory negligence. *Ohio & M. Ry. Co. v. Allender*, 47 Ill. App. 484, is cited in support of the text. It was there held that a person voluntarily going upon the front platform of the express car in a given train takes upon himself the hazard of his voluntary act, which imposes upon him the exercise of a degree of care commensurate with the risk voluntarily assumed in the ordinary and usual running of the train. In the text of 6 Cyc. 653, we find: ''To ride on the platform of a railroad car while the train is in rapid motion is usually treated as negligence *per se,* such as to defeat recovery for injuries received by reason of riding in such position; but there are cases in which such an act is said not to be negligence *per se,* even where there is no particular excuse for it. And where the car is so crowded that there is no reasonable accommodation inside, the act of riding on the platform is treated as not negligent. As, therefore, the question of the propriety of riding on the platform depends on circumstances, it is prop-

erly for the jury.'' Extensive notes on the question
are found in 29 L. R. A. (N. S.) 325, and L. R. A.
1915B 166. These cases and authorities are dealing
with commercial railroads operated by steam power.
In the present case we have a commercial road not
operated by steam power, occupying an intermediate
position between the older commercial roads and the
street car, with functions and duties partaking of the
nature of each. It is said in 6 Cyc. 654: ''As to
street cars, the rule as to riding on the platform is
more liberal, and it is generally said not to be negli-
gence *per se* to do⁰so.'' *North Chicago St. R. Co. v.
Baur,* 179 Ill. 126, is cited in support of the text. In
that case it was said there was no regulation of the
railway prohibiting passengers from riding on the
platform, but it appeared that other passengers did so
ride without objection on the part of those in charge
of the car; therefore, that the fact that plaintiff was
standing on the platform when injured was not such
negligence as would preclude a recovery; that it was
a question of fact for the jury to determine from all
the facts and circumstances surrounding the transac-
tion. The court said we cannot denude ourselves of
the knowledge, which is alike common to all, that pas-
sengers are constantly riding upon these platforms
with the tacit assent of the defendant and without any
posted notice or regulation. It was also held in *Chi-
cago Union Traction Co. v. Lawrence,* 113 Ill. App.
269, that it is not negligence *per se* for a passenger to
ride upon the platform of a street car.

We will not extend this opinion by discussing a
great number of other authorities that may be readily
found following the lines above indicated. We do not
think it can be said as matter of law that it is negli-
gence under any and all circumstances to ride on the
platform of a moving car. The trial court could not
direct a verdict for the defendant on the ground that

Blair et al. v. Chicago, Ottawa & Peoria Ry. Co., 205 Ill. App. 160.

it was negligence *per se* for the plaintiffs' intestate to ride on that platform, and he could not direct a verdict because the preponderance of the evidence in this case was that it was negligence for him to do so, or that the defendant was not negligent. If there was any fair question as to the conclusion to be drawn from the evidentiary facts, he was bound to submit it to the jury. But he was charged with the duty to grant a new trial if, in his opinion, the verdict of the jury was manifestly against the weight of the evidence, and it is our duty to examine the case on the facts and not accept the conclusion of the jury if, in our judgment, it is manifestly against the weight of the evidence.

We do not see how under the admitted facts the defendant can be held negligent. Proof was offered by the defendant that it was usual and customary in the operation of such cars to leave one of the vestibule doors open. Objection of the plaintiffs to this proof was sustained, perhaps properly. But it is almost, if not quite, a matter of common knowledge that one door of a car making frequent stops is usually left open, and unless some special reason appeared for shutting it between stops, and none did here appear, a jury would not be warranted in finding that act negligence; neither were the jury warranted in finding that the rate of speed at which the car was running negligence, even though it was approaching the point at which it was to stop for plaintiffs' intestate to alight. We think it quite as clear that the defendant was not negligent as that plaintiffs' intestate was negligent. Other prudent men might have stood upon the platform under similar circumstances, but if it is conceded that they might do so they still would be required to exercise a degree of care commensurate with the known danger. The conclusion cannot reasonably be reached that the defendant was negligent in leaving the door open, and that the plaintiffs' intestate was not

negligent in not guarding himself against the obvious danger.

We conclude that the judgment should be reversed on the ground that the verdict is manifestly against the weight of the evidence; and as there is no reason to presume the facts would appear other or different on another trial, the cause is not remanded.

*Reversed with finding of facts.*

Finding of facts: We find that the defendant was not guilty of any negligence causing or contributing to the death of the plaintiffs' intestate, and that he at the time in question was not in the exercise of ordinary care for his own safety.