**FIEDLER v. CHICAGO & N. W. RY. CO.**
No. 10797.

United States Court of Appeals
Seventh Circuit.

May 25, 1953.

Rehearing Denied June 26, 1953.

Lowell Hastings and Drennan J. Slater, Chicago, Ill., for appellant.

William F. Patterson, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment of the District Court which awarded the plaintiff, Kenneth W. Fiedler, damages of $20,000, for personal injuries, against the defendant, Chicago and North Western Railway Company. The alleged errors relied on arose out of the trial court's refusal to grant the defendant's motion for judgment notwithstanding the verdict and its refusal to grant the defendant a new trial.

The plaintiff was a passenger on a train of the defendant at the time of the accident which resulted in the plaintiff's injuries. The jury, in addition to its general verdict in favor of the plaintiff, gave an affirmative answer to the following special interrogatory:

"Do you find from a preponderance or greater weight of the evidence that the plaintiff at the time and place alleged in his complaint was thrown or caused to fall from the train in question by an unnecessary or unusually sudden or violent jerk, jar or lurch of the train or coach upon which he was riding?"

In the oral argument before this court counsel for the defendant apparently conceded that there was sufficient evidence to justify the submission of this special interrogatory to the jury.

The principal contention of the defendant in this court is that the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law and that it was, therefore, the duty of the trial court to grant the defendant's motion for a judgment notwithstanding the verdict.

The evidence shows that on the night in question the plaintiff, on his way from his work to his home, boarded the defendant's train at Elmhurst, Illinois, to ride to the defendant's Austin Station. The train involved consisted of a steam engine and three coaches. Only the last coach was lighted and open for the use of passengers. The plaintiff was accustomed to taking this particular train nightly on his way home from work. On the night of the accident the plaintiff sat down near the front end of the lighted coach. The plaintiff and two women were the only paid passengers in the coach but there were several of the defendant's employees who were also riding in the coach.

In accordance with long established custom, the conductor sat at the rear and on the north side of the coach. He sat at that particular location so that, as the train came into a station, he could raise the window next to him and look ahead along the station platform to see if there were any passengers waiting to board the train. If there were no passengers waiting to get on the train and if no one was getting off at that station, the conductor would then give the engineer a signal to go ahead. On this night when the train in which the plaintiff was riding reached the Austin Station, the plaintiff left his seat and went out of the front door and on to the platform of the coach. On the door through which he passed there was a sign reading: "Please do not get on or off moving trains. Keep off platform until trains stop." The plaintiff was followed out of the coach by two of the defendant's employees who were also getting off at that station. The train was then moving on a straight track and at a speed of only about three or four miles an hour. As the train continued to slow down for the Austin Station, the plaintiff stepped down to the first or second step from the platform on the front of the coach. When he was in that position there occurred what the plaintiff described as a forward jerk or quick lurch of the train. Plaintiff said that this threw him off the train to the ground and caused his injuries.

The conductor of the train said that when he looked out of the window at the Austin Station to see if there were any passengers waiting to get on the train, he saw no passengers waiting to board the train but that he did see passengers going through the front door of the coach on to the platform preparatory to getting off. It is apparent from the testimony in this case that, as the train approached the station at which they were going to get off, passengers customarily went out on the platform of the coach before the train stopped. It is also apparent that, in spite of the sign

on the coach door warning against passengers being on the platform before the train stopped, the defendant's employees not only did not object to this practice but also indulged in it themselves, as shown by the fact that two of the employees were on the platform of the coach when this accident occurred.

■ Under the circumstances disclosed by the evidence in this case, can we say as a matter of law that the plaintiff was guilty of contributory negligence in going out on the platform or in stepping down on to the steps while waiting for the train to come to a complete stop? We think not.

At the time of the accident the plaintiff was about 34 or 35 years of age. He was apparently an active man. He was a former basketball player and had never before that time sustained an injury. At the time of the accident he was burdened with no packages and his arms were, therefore, entirely free. There were steel bars for handholds on each side of the steps for the use of passengers when boarding or leaving the train. At the time of the accident the plaintiff was holding on to one of these handholds. He did not remember which one. Under these circumstances it would appear that there would have been no real danger to the plaintiff as he stood on the steps of the platform holding on to a steel bar, except for the negligence in the operation of the defendant's train.

■ Since the plaintiff was a regular passenger on this same train we may assume that he knew of the practice and custom of the passengers and employees of going out on the platform before the train stopped. If the plaintiff knew this, he could assume that the defendant's employees in charge of the train also knew of this practice, and the plaintiff also had the right to assume that those in charge of the train would not unnecessarily endanger passengers and employees who might be on the platform or steps of the coach by negligently causing the train to suddenly lurch or jerk. All of these matters might properly have been considered by the jury in determining whether the plaintiff failed to use due care for his own safety and whether

such failure was a contributory cause of his injuries.

■ Under the Illinois law where, as here, there was no evidence of wilful and wanton injury inflicted on the plaintiff by the defendant, the plaintiff had the burden of proving that there was no failure on his part to exercise ordinary care which contributed to his injury. Illinois Central Railroad Co. v. Oswald, 338 Ill. 270, 274, 170 N.E. 247. But unless this court can say from a consideration of all of the evidence that the plaintiff was guilty of contributory negligence as a matter of law, we cannot say that it was error for the trial judge to refuse the defendant a judgment notwithstanding the verdict and the answer to the special interrogatory. In our consideration of this question we must bear in mind that failure of the plaintiff to anticipate and guard against a sudden jerk caused by negligence of the defendant would not constitute negligence on plaintiff's part. Willis v. Long Island R. R. Co., 32 Barb., N.Y., 398, 405.

The defendant in urging that the plaintiff was guilty of contributory negligence as a matter of law cites as its three best cases on this point, Swigart v. Chicago & North Western Ry. Co., 7 Cir., 180 F.2d 177; Blair v. Chicago, Ottawa & Peoria Ry. Co., 205 Ill.App. 160; and Ervin v. Peoria Ry. Co., 179 Ill.App. 409.

In the Swigart case, the plaintiff, who was carrying a package in his left hand and a top coat over his left arm, attempted to board a Chicago suburban train at night when it was moving fast enough so that when the plaintiff grabbed the handhold with his right hand and stepped on to the first step, he was whirled around with such force that he lost his grip and fell to the ground. This court, in deciding that in that case there was contributory negligence as a matter of law, distinguished the cases cited by the plaintiff by saying, 180 F.2d at page 180: " * * * because here there is no evidence that plaintiff tripped, slipped or stumbled, or was pushed or crowded, or *that the train jerked or lurched,* or that any train employee invited him to board the train." (Our emphasis.) In the in-

stant case it is not even the contention of the defendant that the plaintiff was trying to get off the train before it came to a stop.

In Blair v. Chicago, Ottawa & Peoria Ry. Co., 205 Ill.App. 160, the injured passenger was a man 65 years of age. He was not on the platform of the train preparatory to getting off but for the entire trip he had been riding on the platform instead of in the coach where there were available seats. As the train neared the point where he was to get off it was moving about 30 or 40 miles per hour. His fall was not caused by any unusual motion. In fact, it was not shown how or why he fell. As to the duty of the trial judge in such a case as that the Illinois Appellate Court said, at pages 165–166 of 205 Ill.App. "We do not think it can be said as a matter of law that it is negligence under any and all circumstances to ride on the platform of a moving car. The trial court could not direct a verdict for the defendant on the ground that it was negligence *per se* for the plaintiffs' intestate to ride on that platform, and he could not direct a verdict because the preponderance of the evidence in this case was that it was negligence for him to do so, or that the defendant was not negligent. *If there was any fair question as to the conclusion to be drawn from the evidentiary facts, he was bound to submit it to the jury.*" (Our emphasis.)

While the facts in the Blair case are a far cry from the facts in the instant case, it is clear from the opinion in that case that the court recognized that the question of contributory negligence is ordinarily a question for the jury.

In Ervin v. Peoria Ry. Co., 179 Ill.App. 409, the plaintiff was a woman riding as a passenger on a trailer drawn by a motor car on the defendant's railway. The trailer was fitted on each side with foot-boards running the length of the trailer. Passengers were able to step from seats in the trailer directly to these foot-boards. From her seat the plaintiff signaled for the car to stop at the next street intersection, but then, when the trailer was in the middle of the block, she stepped out on the foot-board and was caused to fall off because of the ordinary swaying of the street car. The court there held that the defendant was not guilty of negligence in the manner in which the car was operated and that the plaintiff was guilty of negligence in stepping down on the foot-board in the middle of the block without holding on to the handhold tight enough to withstand the ordinary sway and jerk of the car.

But, as we said above, in the instant case there was negligence on the part of the defendant in the operation of the train, and the plaintiff here cannot be charged with negligence in failing to guard against the results of a sudden jerk caused by such negligence of the defendant.

In the early case of Quinn v. Illinois Central Railroad Co., 51 Ill. 495, also cited by the defendant as supporting its proposition that the plaintiff was guilty of contributory negligence as a matter of law, the passenger, making a 12 mile trip, was standing out on the platform. While he was standing there and paying his fare to the conductor, a bank note was blown from the conductor's hand. In attempting to retrieve the bank note, the passenger lost his balance and fell off the train. The court there said that it was the negligence of the passenger, not of the railroad company, which caused the accident. In a supplemental opinion of the court on a petition for rehearing, the court said, at page 499 of 51 Ill. "When a passenger voluntarily places himself in the most exposed position, with abundant standing room within the cars, and falls to the ground, *not in consequence of a collision, or a broken rail, or other fault of the company,* but in an endeavor to secure money that the wind had blown away, we can see no ground for holding that his own negligence is not far greater than any that can be attributed to the company." (Our emphasis.) There, again, the evidence showed no negligence on the part of the railroad company.

The recent case of Schwickrath v. Lowden, 317 Ill.App. 431, 46 N.E.2d 162 comes nearer presenting facts comparable to the facts in the instant case than do any of the cases cited by the defendant. In the

Schwickrath case the plaintiff was a girl 15 years of age who was returning home from school as a passenger on a suburban train, as was her daily habit. As the train approached the 99th Street Station, the plaintiff, as had been her custom, left her seat and walked to the head-end of the car and then stood on the platform preparatory to leaving the train. As the plaintiff was standing there she was holding on to the handhold of the car with her left hand. As the train approached the station and came to a curve in the railroad tracks, there was a violent lurch of the coach which threw her from the train. There was testimony that the jerk of the train which threw plaintiff to the ground was an unusual jerk or lurch. After the jury had returned a verdict for the plaintiff, the trial judge entered a judgment for the defendant notwithstanding the verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law, apparently because of the fact that the plaintiff was standing on the platform waiting for the train to stop so that she could alight. There, as in the instant case, there was evidence that it was customary for passengers intending to get off the train to proceed to the platform as the train approached the station. There, as here, there were signs near the doors of the train to the effect that passengers were not allowed to ride on the steps and platform and that passengers should remain seated until trains came to a full stop but there, as here, there was evidence that these rules were not enforced. In that case the Illinois Appellate Court said, 317 Ill.App. at page 435, 46 N. E.2d at page 164, that under the circumstances disclosed, " * * * it was a question for the jury to determine whether the plaintiff, in her actions, was guilty of contributory negligence. We cannot agree that she was so guilty as a matter of law." The judgment entered by the trial court for the defendant was reversed and judgment for the plaintiff was entered by the Appellate Court upon the verdict.

The Schwickrath case is the most recent Illinois authority which has been called to our attention or which we have found as to the law of Illinois on this question. It is our opinion that under the law of Illinois the facts of the instant case do not show that the plaintiff was guilty of contributory negligence as a matter of law.

The defendant also insists that the verdict should be set aside because "it is capricious, arbitrary and in total disregard of the evidence." The defendant calls attention to the larger number of its witnesses who testified that there was no unusual or severe jerk of the train at the time of the accident. The trial judge saw the witnesses and heard them testify. He necessarily saw and considered the many inconsistencies in the testimony of the defendant's witnesses. He must have wondered at the testimony of the two employees of the defendant who were standing on the lighted platform and steps just behind the plaintiff at the time of the accident. Neither of these witnesses, according to their testimony, saw the plaintiff step down or fall down to the ground. According to them he just suddenly disappeared and was not there.

Nor is the verdict shown to be capricious, arbitrary or in total disregard of the evidence by the amount of the verdict. In a former trial of this cause the jury returned a verdict for $17,000. In the instant trial the verdict was for $28,500 but, at the suggestion of the trial judge, there was a remittitur of $8,500, and judgment was then entered for $20,000.

At the time of this accident the plaintiff was about 35 years of age and he had never before sustained an injury. As a result of this accident his left foot was so severely mangled that it was necessary to amputate, the second, third, fourth and fifth toes. In doing this it was also necessary to remove some of the bone shafts of the metatarsals. The first toe was also fractured. For a month after the accident the plaintiff was in a hospital and was in bed for a short time after he returned home. Plaintiff was then able to get around for a time on crutches and later with the help of a cane. Since the accident, it has been necessary for the plaintiff to wear expensive, specially made shoes which were prescribed by his physi-

cian to give the injured foot additional support. After approximately a year the plaintiff returned to work for a company for which he had formerly worked as a salesman at a salary averaging $65 to $75 a week. Since the accident the plaintiff has only done clerical work for this company for about two and a half years and has received a salary of only $45 per week. Standing or walking for any extended time tires plaintiff's feet and causes his left foot to throb. It is now difficult for him to walk on snow or ice. In view of these undisputed facts we cannot say that the amount of the verdict shows that the verdict was capricious or arbitrary.

Nor do we think that the verdict was so grossly excessive "that it can be accounted for only on the basis that the jury was influenced by passion or prejudice." A permanent injury to a man of plaintiff's age, which causes a loss of the partial use of his foot and leg and which means that for the rest of his life he can do only inside work, at a salary materially lower than the salary he had received before his accident, is a serious injury which justifies a substantial award of damages.

The question of the amount of damages is primarily a question of fact to be answered by the jury. If the trial judge, who has also seen and heard the witnesses, is convinced that the amount of damages fixed by the jury is too high, he can properly do what was done in the instant case—ask for a remittitur as an alternative to his granting a new trial. The fact that the plaintiff here followed the suggestion of the trial judge and entered a remittitur, rather than submit to another trial, does not prove that the trial court and the plaintiff agreed that the verdict was based on prejudice or passion.

Finally, the defendant complained of the trial judge's refusal, after the jury had retired, to instruct the jury to disregard certain remarks which counsel for the plaintiff had made in his closing argument to the jury. Counsel for the defendant had objected to these remarks immediately after they were made. We have considered the arguments made to the jury by counsel for both sides. We have also considered the very complete instructions given to the jury by the trial judge, especially the instructions defining the measure of damages and admonishing the jury against being influenced by either pity for the plaintiff or prejudice against the defendant. In the absence of any evidence to the contrary we must assume that the jury followed those instructions. We find no such evidence. We do not believe that the refusal of the court to instruct the jury to disregard that part of the plaintiff's argument which was objected to constituted reversible error.

The judgment of the District Court is Affirmed.